[S. F. No. 8017.  In Bank.—May 27, 1918.]

## MARIN MUNICIPAL WATER DISTRICT (a Public Corporation), Respondent, v. MARIN WATER AND POWER COMPANY (a Corporation), et al., Appellants.

EMINENT DOMAIN—PUBLIC UTILITIES ACT—CONDEMNATION OF PROPERTY DEVOTED TO PUBLIC USE—DETERMINATION OF VALUE—FINDING OF RAILROAD COMMISSION CONCLUSIVE.—Under section 47 of the Public Utilities Act, where, after the railroad commission has fixed and determined and certified, in accordance with section 70 of the act, the compensation that should be paid by a county municipal water district or other public corporation to acquire an existing public utility, the district or public corporation desiring to acquire such existing public utility commences an action in the superior court to take the property under eminent domain proceedings, the finding of the commission on the subject of value is final and conclusive, and the superior court is not authorized to determine the value of the property, and give judgment for such value, as the compensation to be paid to the owner.

ID.—CONSTITUTIONAL LAW—POWER OF RAILROAD COMMISSION TO FIX COMPENSATION.—Section 47 of the Public Utilities Act, in so far as it provides for the taking of property at the time of the judgment in the superior court, upon payment of the value previously fixed by the commission, is not in conflict with any provision of the constitution of California, since section 23a of article XII of the constitution, which was adopted as an amendment in November, 1914, gives the legislature authority to confer upon the railroad commission the power to fix the just compensation for existing public utilities, and confirms and declares valid all acts of the legislature previously adopted, which, of course, includes said section 47 of the Public Utilities Act and renders it immune from attack, as violative of any provisions of the state constitution on the subject of eminent domain.

ID.—FEDERAL CONSTITUTION—DUE PROCESS OF LAW—EQUAL PROTECTION. Section 47 of the Public Utilities Act is not violative of the clauses of the federal constitution prohibiting a state from depriving a person of his property without due process of law, or denying him the equal protection of the laws, since that section provides in express terms for the ascertainment and payment to the owner of just compensation for the property taken, and creates a special proceeding in eminent domain, including the ascertainment of value by the railroad commission by a proceeding which has been directly held to be of a judicial character.

ID.—JURY NOT ESSENTIAL.—It is not essential to "due process," as required by the fourteenth amendment to the United States constitution, that the compensation to be paid for property taken or damaged under the power of eminent domain be fixed by a jury.

ID.—DISCRIMINATION.—The inhibition in the federal constitution against a state denying any person the equal protection of the laws does not prohibit a state from establishing different rules of procedure for different classes of cases or of litigants, provided the variations relate merely to matters of procedure, and do not operate to deprive any class of substantial equality in the adjudication of its rights or liabilities; and none of the discriminations between the mode of condemning property under the general law (Code of Civil Procedure, section 1238 et seq) and the procedure provided by section 47 of the Public Utilities Act for condemning the property of public utilities in certain cases goes to any matter of essential or fundamental right, but only to mere matters of procedure.

ID.—DISTINCT CLASSES OF PUBLIC CORPORATIONS—JUSTIFICATION FOR DISCRIMINATORY LEGISLATION.—The corporations which, under section 47 of the Public Utilities Act, are empowered to own and operate public utilities clearly constitute a class sufficiently distinct from all other persons or corporations engaged in public service, and desiring to acquire property for public use, to justify peculiar legislation relating to them.

ID.—DATE AT WHICH VALUE ESTIMATED—CODE SECTION INAPPLICABLE.—Section 1249 of the Code of Civil Procedure has no application in actions authorized by section 47 of the Public Utilities Act, with respect to the date at which the value of property taken for public use shall be estimated.

APPEAL from a judgment of the Superior Court of Marin County.   Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

Lilienthal, McKinstry & Raymond, for Appellants.

Curtis H. Lindley, and George H. Harlan, for Respondent.

SHAW, J.—This was a proceeding in condemnation by the plaintiff to acquire the property devoted to public use by the defendant Marin Water and Power Company.   The other defendant is only indirectly interested in the proceeding and its interests need not be further considered.   The appeal was originally taken to the district court of appeal of the first district, and the judgment was there affirmed upon an opinion

by Mr. Justice Richards. Thereafter, upon petition, the decision of that court was vacated and the case transferred to this court for further consideration. The facts and questions involved in the case are well stated in the following portions of the opinion of Justice Richards:

"This is an appeal from a judgment in favor of the plaintiff in an action instituted for the purpose of the condemnation of the defendants' properties for public uses. The appeal is taken upon the judgment-roll.

"The first and practically only point presented by the appellants is that the.court erred in striking out certain portions of the defendants' amended answer upon plaintiff's motion, and upon the ground that the portions of the said amended answer assailed by said motion tendered no issuable facts and that the same were immaterial, irrelevant and redundant matter.

"A brief statement of the facts of the case will suffice for the purpose of a review of this contention: The plaintiff herein is a public corporation formed for the purpose of supplying the inhabitants of a designated district in Marin County with water. The defendant Marin Water and Power Company owned the lands and properties described in the complaint, and upon these the defendant Mercantile Trust Company of San Francisco had a lien under the terms of a trust deed. The said plaintiff determined by proper resolution that the public interest required the acquisition by it of the said properties of the defendants for its public uses, and thereupon instituted a proceeding before the railroad commission of the state of California under the provisions of the Public Utilities Act, for the purpose of having determined the values of the defendants' said properties and the just compensation which should be paid by the plaintiff therefor in its proposed condemnation suit; and such steps were taken in that proceeding that on the ninth day of April, 1915, the. railroad commission filed its findings to the effect that the just compensation which should be paid for said properties was the sum of one million two hundred thousand five hundred dollars. This decision of the commission became final on May 10, 1915; and under the provisions of section 47 of the Public Utilities Act the earliest date thereafter upon which the plaintiff could commence this action for the condemnation of said properties was May 31,

1915.   This action was begun on June 5, 1915.   The answer
of the defendants was filed on December 17, 1915, and in their
said answer the defendants did not put in issue by any suffi-
cient pleading the question as to whether the findings and con-
clusions of the railroad commission as to the values of their
properties were just and reasonable, but attacked the proceed-
·ings before the commission on other grounds.   On March 16,
1916, a few days before the case came to trial, the defendants
filed an amended answer in which the following averments
appear:

" 'For a separate and distinct defense alleges that the value
of the properties of defendant Marin Water and Power Com-
pany is at the present time far greater than the value thereof
at the date of the said award of the said railroad commission
of the state of California, and that the condemnation thereof
at this time for a price determined at a time when their value
was less, as aforesaid, operates to deprive defendants and each
thereof of property without due process of law.'

" 'For a separate and distinct answer denies that the pro-
ceedings before the railroad commission of the state of Cali-
fornia referred to in said complaint were conducted in all
respects, or any respects, according to law; and in this con-
nection alleges that such proceedings were not conducted
according to law, and in this connection admits that the com-
pensation fixed by said railroad commission of the state of
California for the lands, properties, and rights of defendant
Marin Water and Power Company was and is the sum of
$1,200,150, and denies that such compensation is just.'

"The plaintiff moved to strike out the above averments
from the defendants' amended answer as presenting no issu-
able facts and as immaterial, irrelevant, and redundant.   The
court granted said motion, and its order in so doing consti-
tutes the chief ground of the defendants' contention upon
this appeal."

The first of the above-quoted paragraphs of the answer was
filed upon the theory that the superior court, in an action for
condemnation begun under section 47 of the Public Utilities
Act, is authorized to determine the value of the property at
the time of the trial, and give judgment for such value, as the
compensation to be paid to the owner.   We find nothing in
support of this theory in the statute governing the subject.

Section 47 is extremely prolix and complex in its diction, but so far as this case is concerned, the plan therein provided is comparatively simple and may be briefly stated.

Certain named classes of public corporations, including the plaintiff, desiring to take over and operate an existing public utility, may proceed, as in that section provided, to acquire the property of the owner of such public utility which is de-voted to such public use. It must file a petition with the railroad commission to have the just compensation to be paid to the owner of the property determined. Thereupon the commission shall proceed in the manner provided in section 70 of the act, to determine such compensation. Within sixty days after the commission has certified its findings, such public corporation must commence an action in eminent domain to take the property, the value of which has been so determined by the commission. In such action the finding of the commission on the subject of value "shall be deemed final and conclusive between the parties," and after determining the right and power of the public corporation to take the property as proposed, as provided in the chapter of the Code of Civil Procedure relating to proceedings in eminent domain (sections 1237–1264), the court in such action shall give judgment, fixing as the amount of compensation to be paid to the owner, the value of the property as found by the commission in such certified findings.

It will be seen from these provisions that in the action in eminent domain to be begun under this section, the superior court has no function to perform concerning the value of the property, but must take the finding of the commission as conclusive on the subject. The appellant claims that authority for a new finding on the subject by the superior court is to be found in section 70 of the act. Section 47 declares that the commission shall proceed to make the determination as to compensation and value "in accordance with the provisions of section 70 of this Act." Section 70 was originally enacted, before the amendment of 1913 to section 47, providing for valuations for purposes of condemnation by the public corporations there named. It has not been changed since its original enactment in 1911. At that time the commission was authorized to value the property of public utilities only for purposes of regulation. With this end in view the section provided that after determining the value of the property of

any public utility, the commission may from time to time make revaluations thereof, and of any improvements thereto, for the purpose of ascertaining the value thereof at some subsequent time, and that said supplemental finding shall be considered in connection with and as a part of the original findings, and as amendatory thereof. There is nothing in these provisions which authorizes the superior court to inquire concerning the value of the property or to find a value different from that previously determined and certified by the railroad commission. If any additional findings of value can be made for the purposes of a condemnation suit under section 47, they must be made by the railroad commission and not by the superior court. That section provides for a deduction from the valuation originally fixed by the commission, on account of depreciation or deterioration in the value of the property before payment of compensation is made. The amount of such deduction, however, is not to be determined by the superior court, but is to be determined by the railroad commission after the judgment of condemnation is made in the superior court. Section 47 declares that the judgment shall provide that it shall be subject to modification accordingly, if such finding is made. There is no provision for any finding on the subject by the superior court. The section provides that a petition to the commission to determine the amount of such deduction may be made by the public corporation at any time after the first application to the commission and before the payment of the compensation fixed by the judgment of the superior court. But no provision is made for a finding by the court of a subsequent increase in value.

The effect of section 47 is to provide a scheme for the condemnation of property by the public corporations mentioned therein, by a proceeding wherein the value is to be fixed by the railroad commission, and the right and power of such public corporation to condemn the property is to be determined by the superior court. The enforcement thereof is also given over to the superior court. The appellant contends that if it shall be construed to provide for the taking of the property at the time of the judgment in the superior court, upon payment of the value previously fixed by the commission, it would be unconstitutional. The argument is that the owner is entitled to the value of the property at the time it is taken, and that he cannot be deprived thereof for public use upon pay-

ment as compensation of the value fixed at a previous time, unless it shall appear that there has been no increase in value up to the time it is taken.

So far as the provisions of the constitution of California are concerned, the proposition is without merit. In November, 1914, after the amendment of section 47 in 1913, the constitution itself was amended by the addition thereto of section 23a, article XII, giving the legislature authority to confer upon the railroad commission the power to fix the just compensation to be paid for existing public utilities as provided in section 47, and confirming and declaring valid all acts of the legislature previously adopted, which, of course, includes said amendment of section 47. It follows that if any of the provisions of said section should be deemed to be in violation of any provision of the constitution on the subject of eminent domain, the amendment of 1914 to article XII would supersede such provision and render the act immune from attack on such grounds.

Nor is the enactment, we think, violative of the clauses of the federal constitution prohibiting a state from depriving a person of his property without due process of law, or denying him the equal protection of the laws.

It is not to be doubted that, irrespective of any more specific requirements in state constitutions, the due process clause of the fourteenth amendment requires compensation to be made or secured to the owner of private property taken by authority of the state for public use. (*Chicago, B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226, [41 L. Ed. 979, 17 Sup. Ct. Rep. 581].) But section 47 of the Public Utilities Act provides in express terms for the ascertainment, and the payment to the owner, of "just compensation" for property taken. It is contended that the scheme of valuation is not fair to the owners of public utilities, in that the value is fixed as of the time of the hearing by the railroad commission, which must precede the commencement of the formal condemnation suit. Under the general law relative to eminent domain, the value of property taken is assessed as of the date of the issuance of summons. (Code Civ. Proc., sec. 1249.) It is settled by our decisions that this rule (the equivalent of which is found in many other states, 15 Cyc. 721) involves no violation of constitutional right. (*California Southern R. R. Co.* v. *Kimball,* 61 Cal. 90; *Tehama County* v. *Bryan,* 68 Cal. 57, [8 Pac.

673] ; *San Jose etc. R. R. Co.* v. *Mayne,* 83 Cal. 566, [23 Pac. 522] ; *Los Angeles* v. *Pomeroy,* 124 Cal. 597, 648, [57 Pac. 585] ; *Sacramento Terminal Co.* v. *McDougall,* 19 Cal. App. 562, [126 Pac. 503].)　On analysis, it will be found that the distinction between the code provisions and those of the Public Utilities Act is formal rather than substantial.　Section 47 creates a special proceeding in eminent domain.　The ascertainment of value by the railroad commission, and the subsequent action in the superior court, in which the previous finding of value is made conclusive, are both parts of that proceeding.　The hearing by the commission on the question of value is merely a step in the litigation prosecuted to enforce the right of eminent domain.　In effect, therefore, the value is fixed as of the date of the institution of the condemnation proceeding, as it is in cases prosecuted under the code sections alone.

The fixing of the amount payable as compensation for property taken for public use presents a judicial question (*Monongahela Nav. Co.* v. *United States,* 148 U. S. 312, 327, [37 L. Ed. 463, 13 Sup. Ct. Rep. 622]), and it may well be that due process of law would be lacking in a proceeding by which the state should assume to take private property without providing for the ascertainment of compensation by some form of judicial proceeding.　The Public Utilities Act is not, however, open to criticism on this ground.　The hearing provided for to determine the amount, under section 47, is to be held in the manner provided in section 70, and that section guarantees to the owner affected written notice of the hearing, together with the right to be heard and to introduce evidence. That the valuation proceeding before the commission is judicial in character was directly held by this court in its review, on *certiorari,* of the finding of value made in the case of this very appellant.　(*Marin Water & Power Co.* v. *Railroad Commission,* 171 Cal. 706, 712, [Ann. Cas. 1917C, 114, 154 Pac. 864].)

Finally, on this branch of the inquiry, it may be remarked that it is not essential to the due process as required by the fourteenth amendment that the compensation to be paid for property taken or damaged under the power of eminent domain be fixed by a jury.　(15 Cyc. 873; *Chicago, B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 244, 245, [41 L. Ed. 979, 17 Sup. Ct. Rep. 581] ; *Bauman* v. *Ross,* 167 U. S. 548, [42 L. Ed.

270, 17 Sup. Ct. Rep. 966]. See *Koppikus* v. *State Capitol Commission,* 16 Cal. 248; *People* v. *Blake,* 19 Cal. 579.)

The contention that the procedure authorized by the Public Utilities Act deprives the appellant of the equal protection of the laws is based upon the discriminations to which we have just referred between the mode of condemning property under the general law and that provided by section 47 for condemning the property of public utilities in certain cases. None of these discriminations, as we have seen, goes to any matter of essential justice or fundamental right. The constitutional provision under consideration does not prohibit a state from establishing different rules of procedure for different classes of cases or of litigants, provided the variations relate merely to matters of procedure, and do not operate to deprive any class of substantial equality in the adjudication of its rights or liabilities. (12 C. J. 948; *Cincinnati St. Ry. Co.* v. *Snell,* 193 U. S. 30, [48 L. Ed. 604, 24 Sup. Ct. Rep. 319] ; *Cook* v. *Ray Mfg. Co.,* 159 Cal. 694, [115 Pac. 318].) In condemnation proceedings, so long as the state provides a fair and equitable judicial inquiry, in which the parties interested are allowed to be heard and present evidence, and are protected in their right to have just compensation, they are not deprived of the equal protection of the laws because the state, under authority of its own constitution, has seen fit to provide for other classes of cases a different method or a different tribunal for accomplishing the same result. (*South Carolina etc. R. Co.* v. *American Tel. & Tel. Co.,* 65 S. C. 459, [43 S. E. 970] ; *Kennebec Water Dist.* v. *Waterville,* 96 Me. 234, [52 Atl. 774].) Whether the property of public utilities forms a class which may fairly be thought to require a different kind of procedure from that adopted for the taking of other property by eminent domain is primarily a question for the state itself. Elements of peculiar complication and difficulty are often involved in the valuation of the property of a public utility. The fact that public utilities are subject to constant regulation and examination by the railroad commission may well have led the legislature to conclude that that commission was best able to make a just and equitable appraisement of their property. (*Kennebec Water Dist.* v. *Waterville, supra.*) So far as defendants are concerned, the classification made by the act cannot, therefore, be regarded as purely arbitrary. It is not claimed that any constitutional right of the appellant

is invaded by the limitation of the right to proceed as plaintiffs under section 47 to certain kinds of public corporations, which are empowered to own and operate public utilities. Such corporations clearly constitute a class sufficiently distinct from all other persons or corporations engaged in public service and desiring to acquire property for the public use, to justify peculiar legislation relating to them.

Little need be said concerning the second of the above-quoted paragraphs stricken out by the court below. The appellant calls attention to the fact that the complaint itself alleged that the proceedings before the railroad commission were conducted in all respects according to law, and it is claimed that this is an allegation of fact which it is proper for the defendant to deny in the answer. If the superior court in the action in eminent domain had power to review the conduct of the proceedings before the railroad commission and to amend its findings, this allegation of the complaint might be material, and if so, it might be proper to answer it, if it is not a mere conclusion of law, which we do not decide. But the superior court had no such power. The Public Utilities Act provides that in all collateral actions the orders and decisions of the commission which have become final shall be conclusive (section 65), and that no court except the supreme court shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission. (Section 67.) The complaint alleges that the finding of the commission as to compensation was made after due notice had been given to the appellant herein, and upon a hearing regularly had by the commission. This allegation is not denied. Jurisdiction of the person of the appellant was established, and jurisdiction of the subject matter is given by the provisions of section 47, and by the constitution. The finding was, therefore, conclusive, so far as the superior court, and the action in eminent domain, were concerned. The allegation was, therefore, wholly immaterial and was properly stricken from the answer.

We do not think section 1249 of the Code of Civil Procedure has application in actions authorized by section 47 of the Public Utilities Act, with respect to the date at which the value shall be estimated.

The judgment is affirmed.

Sloss, J., Melvin, J., Wilbur, J., Richards, J., *pro tem.*, and Angellotti, C. J., concurred.