[Civ. No. 21335.   Second Dist., Div. One.   June 7, 1956.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Appellant, v. S. & E. HOMEBUILDERS, INC. et al., Respondents.

Robert E. Reed, George C. Hadley, R. B. Pegram, John N. McLaurin and Thomas M. Dankert for Appellant.

W. Sumner Holbrook, Jr., Holbrook, Tarr, Carter & O'Neill and Francis H. O'Neill for Respondents.

DORAN, J.—The plaintiff condemnor appeals from a judgment rendered after a jury's verdict awarding the owner of so-called Parcel 2, the sum of $111,930 as fair market value for said parcel and $31,114 as severance damage.   The eminent domain proceeding here involved was instituted for the purpose of acquiring this and other parcels of land in fee for use in construction of what is known as the Harbor Freeway.

Parcel 2 consists of 13.65 acres which is part of a larger tract of 27.25 acres owned by the defendant Bank of America, herein referred to as respondent.   Except for 4.04 acres, all of respondent's land, including Parcel 2, was separately leased

to Universal Consolidated Oil Company and Shell Oil Company for so long as oil and gas are produced in paying quantities. The oil field has been estimated to have a remaining life of 14 or more years. Amendments to the complaint excepted from acquisition all oil, mineral and gas below a 100 foot level and allowed slant drilling beneath such level. No oil wells or other structures are located on the part sought to be taken. It appears that neither oil company is at this time willing to relinquish the lease rights to use the surface of the land.

It is appellant's position that the property "was not presently available for light industrial use and could not become available for such use for the life of the oil fields, some 14 or 15 years, because of the existing oil leases." Witnesses testified that the highest and best use of the entire parcel was for light manufacturing purposes, either exclusively, according to the state's witnesses, or in conjunction with oil production purposes according to respondent's witnesses. In respect to this matter, appellant contends that the trial court committed prejudicial error in refusing to instruct the jury that the oil and gas leases might be considered for the purpose of determining the availability of the property for its highest and best use, and in instructing that such leases are immaterial for the purpose of determining fair market value and severance damages.

At the outset of trial, it was stipulated that the date of valuation to be considered was the date of commencement of the trial, namely, December 6, 1954. On inquiry by the trial judge, the state expressly elected, as provided in Code of Civil Procedure, section 1246.1, to have the award at the first stage of the trial in lump sum form as to the interests of all parties, and to relegate division of the total award as between individual interests, to a second stage of the trial in which the state would not participate.

Valuation testimony was given by the respondent's three expert witnesses, respectively, estimating the value of the land taken as $184,350, $211,636, and $191,156. The state's witnesses, on direct examination, fixed the estimated value as $53,048, $50,600, and $55,634. On cross-examination of the state's witness, Mason, it appeared that the $53,048 estimated value placed by such witness was based upon what the witness called the highest and best "available use," considering the oil leases, and assuming that the land would for this reason not be available for industrial use for some 14 years.

As stated in respondent's brief, "Questioned as to what value he would have placed upon the property had it been in single ownership, i.e., without oil leases thereon, he admitted a full value for the part taken would have been $87,939." As hereinbefore stated, the jury's award was $111,930.

"The general legal doctrine as stated by the courts is that compensation must be paid for the land that is taken, regardless of the separate interests in the land, and that the sum of the separate values of the divided interests may not exceed the value of the whole. This general rule is embodied in statutes in a number of different states." (Orgel, Valuation under Eminent Domain, 1953, vol. 1, § 109, pp. 461-462.)

In other words, the property to be taken is valued as if owned by a single person, regardless of separate interests therein.

This rule is reflected in section 1246.1 of the Code of Civil Procedure, previously mentioned, which provides that "Where there are two or more estates or divided interests in property sought to be condemned, the plaintiff is entitled to have the amount of the award for said property first determined as between plaintiff and all defendants claiming any interest therein." In the instant case, the state expressly elected to have the award so made.

While conceding the existence of this general rule, "Appellant's position is that the GENERAL rule does not apply to the SPECIFIC situation under consideration, considering the limited hybrid nature of the taking involved." Appellant contends that "A general rule is the mere means to achieve the ultimate end," and that in the instant situation, its application will result in a "misexpenditure of public funds."

Many cases from California and other jurisdictions have been cited by appellant and respondent. Unfortunately, none of these decisions deal with a factual situation comparable to that here involved. However, an examination of such cases indicates adherence to the general rule hereinbefore mentioned, and fails to show that the facts presented in the instant controversy call for any special exception thereto. Moreover, as set forth in respondent's brief, "there is not one California decision, which extensive research has developed, to the effect that it is proper to say that a property such as here, immediately usable, legally and practically, for industrial subdivision purposes, is not 'available' therefor because of *private contractual* agreement existing *between* two of the *co-owners*

of interest in such property in an action where the condemning body seeks to acquire the fee simple estate.'' (Respondent's italics.)

Whatever the situation may be in cases involving legal restrictions imposed by government, or practical difficulties rendering ''highest and best use'' of the property impossible, neither limitation is here applicable. No legal restrictions such as zoning ordinances, etc. prevent industrial use of the property, nor is there any practical impediment to such use. There are no surface structures on the land, and all that is necessary is the cooperation of the interested parties. That the lessee oil companies have presently declined to quitclaim the right to surface use under the leases is of no special significance, since under the general rule, the property to be taken is to be valued as if owned by a single person.

It is to be noted that such cooperation between the parties is mentioned in a letter from one of the oil companies, stating, ''please be advised we will cooperate with you in the industrial development of your property subject to our lease, and will endeavor to relocate such of our installations as may be possible . . . As and when your subdivision plans are available . . . kindly so advise and we will give the matter our attention.''

As in most cases of this kind, there is a material disagreement between the expert witnesses called by the respective parties. As will be seen from the figures previously given, the jury's award was a figure somewhere in between the estimates given,— in other words, well within the scope of the testimony. It was clearly within the jury's province to weigh and evaluate the testimony given, and to consider the basis for the opinions given. The award was for the entire parcel regardless of individual interests therein, and nothing has been shown to indicate that the same was excessive.

Consideration of the instructions as an entirety leads to the conclusion that the trial court was guilty of no reversible error either in the giving of particular instructions or in the refusal to give requested instructions. The record discloses that both parties to the controversy were accorded great liberality in the presentation of their respective claims and in the introduction of evidence relating thereto. As respondent suggests, it is possible that this liberality resulted in the admission of certain testimony as to value which did not accord with the general rule hereinbefore mentioned.

Be that as it may, this is not a matter of which the appellant can complain.

Nor can any legitimate complaint be made because the trial court sought to make plain to the jury that the parcel in question was to be valued as if owned by one person, regardless of the separate interests therein. Had the appellant's requested instructions been given, the jury could well have been left with a confused and contradictory idea of its function in this matter. There is no merit in any of the appellant's contentions.

The judgment is affirmed.

White, P. J.,and Fourt, J., concurred.

A petition for a rehearing was denied June 27, 1956, and appellant's petition for a hearing by the Supreme Court was denied August 1, 1956.