[Civ. No. 22547. First Dist., Div. Two. Feb. 18, 1966.]

COUNTY OF SANTA CLARA, Plaintiff and Appellant, v. ELIZABETH KIYOKO OGATA et al., Defendants and Respondents.

Spencer M. Williams, County Counsel, and Gerald J. Thompson, Deputy County Counsel, for Plaintiff and Appellant.

J. A. London and William G. Filice for Defendants and Respondents.

AGEE, J.—County-condemner appeals following what it contends is an excessive jury award to respondent-owners for

property taken for county expressway purposes. The take was total and no severance damages are involved. The agreed valuation date is August 9, 1963.

The subject property consists of three improved lots in the City of Mountain View, having a common combined street frontage of 145 feet and a depth of 110 feet. A 20-foot alleyway runs along the rear boundary line.

Alma Street runs east and west. It intersects Bailey Avenue at right angles. The subject property is on the north side of Alma to the west of Bailey. Between it and Bailey is a lot owned by the city. Whether this corner lot was available for acquisition and use in combination with the subject property is one of the issues herein.

Appellant's appraiser valued the subject property at $34,500. Respondents' appraiser, Henderson, valued it at $63,800. The jury visited the property under court supervision. It awarded a total amount of $50,242.50.

Appellant's first claim of error is that Henderson's valuation should have been stricken out by the trial court because it was based, not upon its general market value, but upon the assumption that the subject property was to be used for a specific purpose, a service station site.

The parties do not disagree as to the applicable rule of law. Each sets forth excerpts from Henderson's testimony and argues that he did or did not follow such rule in arriving at his valuation.

A brief statement as to the law will suffice. ██ ''A proper estimation of market value takes into consideration all the uses to which the property is adapted and for which it is available including the highest possible use to which it may be reasonably put. The qualification has been made, however, that the highest and most profitable use for which the property is adapted and needed or likely to be needed in the reasonably near future is to be considered, not as an independent measure of value but only to the extent that the prospect of such use affects the market value of the land, since it is not value in use, actual or proposed, to the owner, but market value that measures the award. ██ Where value of the land for any particular use is not taken into account, the valuation for condemnation purposes is incorrect to that extent.'' (17 Cal.Jur.2d, Eminent Domain, § 74, p. 646.)

██ ''Value for a particular purpose is not identical with market value. Therefore evidence is not admissible that is

based on the assumption that by stating value for a particular purpose market value is being stated.'' (*Ibid.*, § 133, pp. 698-699.)

At the very outset of his testimony, Henderson stated that he was employed ''to determine the fair market value of this property'' and that his concept of market value was ''the highest price that the property will bring if exposed on the open market for a reasonable period of time with a willing seller and a willing buyer, with full knowledge of *all the uses* that the property may be put to.'' (Italics added.)

He then stated that ''the highest and best use for this property would be the use for a service station site,'' and, in support of such opinion, related the prices at which six comparable sales of service station sites in the area had been made.

He thereafter testified without objection that, in his opinion, the ''fair market value'' of the subject property was $63,800.

At the conclusion of the direct examination of Henderson, appellant moved to strike his testimony ''on the basis that he has valued his property for a specialized use.'' The court denied the motion but suggested that Henderson should be questioned as to whether he had considered any comparable sales of properties to be used for purposes other than service stations. The court stated it would allow testimony of such sales to be put in later and directed the cross-examination to proceed.

Henderson stated on cross-examination that, while he had ''talked generally'' with respondents about uses of the property, his formal opinion to them was based upon use as a service station site. His explanation was that he ''was quite sure that that would be the highest price for the property.''

While he had listed no sales other than those of service station sites in his formal report, Henderson stated that, as a real estate broker, he had knowledge of a great many other types of sales in the area.

On redirect examination, Henderson related the comparable sales of property other than service station sites which he had considered when making his appraisal investigation. He also detailed a number of uses for the subject property which he had considered.

In conclusion, Henderson testified as follows: ''Q. Now, in

arriving at your appraisal of the fair market value of this property, did you consider, then, all the uses to which this property could be put to? A. I considered most of the uses under the various zoning ordinances. I did not use a systematic check list and say: well, this is not suitable for an animal hospital and things like that. I did consider C-3, M-2, R-3 uses.''

Appellant subsequently moved again to strike Henderson's testimony as to his valuation of the subject property and the motion was again denied.

As part of its charge to the jury, the court gave the following instructions:

''You must take into consideration the purposes for which the property was adapted and determine its market value from what an informed buyer would have paid for the property in cash or its equivalent on August the 9th, 1963, not buying, however, for any particular purpose but having regard to the market value of the property as it then stood for all purposes.''

''The amount you are to fix as the value of the property being acquired should be the fair market value of the property, in view of all the purposes to which it is naturally adapted.''

''You are not to consider the price at which the property would sell under special or extraordinary circumstances, but only its fair market value.''

''Adaptability of land for a particular use is not to be considered in fixing the market value unless the adaptability for such use would increase the value of the land in the minds of informed purchasers generally.''

Even though it be conceded that certain portions of Henderson's testimony, standing alone, will support appellant's contention, it is also true that his entire testimony will support the proposition that his valuation·was not based upon a special or particular use.

■ In any event it is the general rule that: ''Where the valuation testimony embraces proper as well as improper considerations, a motion to strike may properly be denied and the matter left to the court or jury to determine the weight to be given the testimony. The question is addressed to the discretion of the trial court. [Citation.] ■ Whether the opinion as to value is that of an expert or an owner, the weight to be given it is largely dependent on the reasons for the opinion and unless the opinion is wholly and entirely

based on improper considerations or incompetent matters, the weight to be given the opinion is a question for the trier of fact. [Citation.]" (*City of Gilroy* v. *Filice*, 221 Cal.App.2d 259. 271 [34 Cal.Rptr. 368].)

 We are of the opinion that the trial court did not err in denying appellant's motions to strike.

Appellant's second claim of error emanates from the testimony of Henderson that, in order to have made the highest and best use of the subject property, it would have been necessary to acquire the city's corner lot and make an integrated unitary use of the combined holding.

 The possibility of integrating parcels is a factor which may be considered in determining market value, provided such integration would have been reasonably practicable without the exercise of the power of eminent domain. (*People* v. *Ocean Shore Railroad, Inc.* 32 Cal.2d 406, 424 [196 P.2d 570, 6 A.L.R.2d 1179]; 17 Cal.Jur.2d, Eminent Domain, § 76, Potential Unity of Several Parcels.)

 The city had acquired the lot several years before for the purpose of widening the intersection of Alma and Bailey. Not all of it was used for such project and the unused portion was too small to be classified as a standard building lot.

There was competent evidence that this substandard parcel, because of its size and location, would only have value to the abutting owner and that it was available for sale by the city as surplus property during the period preceding January 1, 1963.[1] While such a sale would have called for public bidding, it is reasonable to conclude that the potential high bidder would have been the abutting owner.

As stated by witness McCormick, head of the city's property department, with respect to sales of substandard parcels by the city: "We would negotiate with the abutting owner to see if [he] had an interest in it. If he manifests no interest, we don't bother to put it up to bid because it obviously has a value only to the abutting owner. If he manifests an interest, then, we do go through a sealed bid process."

---

[1] When the question as to the availability of this parcel for acquisition by private parties first arose during the trial, the court designated January 1, 1963 as the "cut-off" date for the determination of such question. No objection was made to the selection of this date. The court instructed the jury as follows: "If you should find as of January 1st, 1963, the parcel owned by the City of Mountain View was not available for acquisition by the Ogatas [respondents], then, you may not consider the element of uniting the parcels of land of the Ogatas and the City of Mountain View."

In our opinion there was substantial evidence to support findings (1) that the joinder of the subject property with the corner lot was reasonably practicable without the exercise of the power of eminent domain, (2) that said lot was available for acquisition by respondents during the period preceding January 1, 1963, and (3) that the prospect of such joinder added an increment of value to the subject property.

It is our further opinion that these three elements present questions of fact which the trial court properly left for the jury to determine (*City of Stockton* v. *Vote,* 76 Cal. App. 369, 407 [244 P. 609] ; *City of Pasadena* v. *Union Trust Co.,* 138 Cal.App. 21, 27 [31 P.2d 463].)

We hold, contrary to appellant's contention, that the prospective or potential use of the integrated properties need not be the same as the condemner's intended use. This is demonstrated in *People* v. *Murray,* 172 Cal.App.2d 219 [342 P.2d 485], wherein plaintiff took approximately 13 acres out of a 62-acre parcel for highway use. Except for about 4 acres, the remainder was described as ''unimproved, vacant land,'' suitable for future residential use.

Although plaintiff's expert witnesses in that case did not evaluate the subject property in conjunction with the adjoining properties, the court pointed out that they did add ''an increment of value by considering the future possible development'' and that ''Even had they proceeded on a theory of 'assemblage,' it would not be error as it was within their proper function as expert witnesses.'' (Pp. 228-229.)

We have concluded that it was not error to allow the jury to consider the evidence pertaining to respondents' ''assemblage'' theory in evaluating the subject property.

Appellant's final contention is that respondents did not meet their burden of proving that it was reasonably probable that the property could be rezoned so as to allow a service station thereon. We do not agree.

The witness Jelavich testified that he was a member of the Mountain View City Council and also had served as a member of its planning commission, twice as chairman; that as a councilman he would have favored a request for rezoning to permit a service station site because the character of the area was such that the request would be logical.

The testimony of the witness McCormick, who was head of the city's property department, further indicated the city's favorable attitude toward service stations in areas not zoned for such use.

He testified to a number of use permits granted to service stations in such areas and cited several instances where the area had been rezoned to permit such use. As he put it, "my experience is that if the location is a logical location, it's usually granted."

Henderson, who had had a long and wide experience in such matters, testified that in his opinion a zoning change could be obtained without any great difficulty.

We hold that respondents met the burden of showing that there was a reasonable probability of such a zoning change and that it was reasonable and proper for their appraiser, Henderson, to consider this as a factor in determining the market value of the subject property. (Cf. *People* ex rel. *Dept. of Public Works* v. *Donovan*, 57 Cal.2d 346, 352 [19 Cal.Rptr. 473, 369 P.2d 1]; *Los Angeles etc. School Dist.* v. *Swenson*, 226 Cal.App.2d 574, 581 [38 Cal.Rptr. 214].)

In conclusion, it may be pointed out that the jury did not accept the valuation of either of the two opposing experts. On the contrary, the jury's award indicates a careful weighing of the various factors involved in determining market value, including the "assemblage" and "probability of rezoning" factors.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.