[Civ. No. 29226. Second Dist., Div. Three. Aug. 25, 1967.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Appellant, v. LYNBAR, INC., et al., Defendants and Respondents.

Harry S. Fenton, R. B. Pegram, Joseph A. Montoya, Richard L. Franck, Philip F. Lanzafame and Charles E. Spencer, Jr., for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Peyton H. Moore, Jr., Assistant City Attorneys, Norman L. Roberts, Deputy City Attorney, Harold W. Kennedy, County Counsel, and A. R. Early, Assistant County Counsel, as Amici Curiae on behalf of Plaintiff and Appellant.

Ervin, Cohen & Jessup, Melvin S. Spears, Jerrold A. Fadem, Gideon Kanner and John C. Sample, Jr., for Defendants and Respondents.

John C. Sample, Jr., as Amicus Curiae on behalf of Defendants and Respondents.

COBEY, J.—This is an appeal by the condemnor, the People of the State of California acting by and through the Department of Public Works, from a judgment in condemnation for freeway purposes awarding to the condemnees, Lynbar, Inc. et al.,[1] the sum of $125,000 for the taking in fee simple absolute by the condemnor of certain real property and all of the interests therein.

This judgment rests upon a stipulation of the parties, made in open court, that $125,000 was the fair market value of the real property involved as of the valuation date of August 1, 1963, or date of condition as it is sometimes known. This stipulation, however, expressly reserved to the condemnor all of its rights of appeal from the subsequent judgment thereon.

This appeal by the condemnor nevertheless, is grounded solely on the proposition that since this valuation of $125,000 is based in part upon the effect of the existence of Tidewater's leasehold in the real property taken, such valuation is legally improper and impermissible as contrary to the codification of the undivided fee rule accomplished impliedly by Code of Civil Procedure, section 1246.1.

On or about May 24, 1961, Lynbar, Inc. ground-leased the real property involved, which was then the site of an operating retail service station in the northern part of the City of Long Beach, to Tidewater for 20 years, commencing on June 1, 1961, at a minimum rental of $725 per month. On August 1, 1963, the aforementioned valuation date, this lease, which was quite advantageous to Lynbar, Inc., was in full force and effect and had 17 years 10 months to run. The retail service station on the property was then in full operation.

The condemnee's sole valuation witness, Metcalfe, testified that in his expert opinion this service station site, including all the interests therein, had a fair market value on the aforementioned August 1, 1963, of $180,000 giving consideration to the existence of this leasehold then being used by the lessee, Tidewater, which had assets of "about a billion dollars." At the conclusion of Metcalfe's testimony the condemnor moved to strike his testimony on the ground that since it had elected

---

[1]Lynbar, Inc., is actually no longer a defendant in this case as Lynn T. Barnes and Leroy Eldred, as coexecutors of the estate of Barbara L. Barnes, deceased, have been duly substituted in its place. We have also been informed in respondent Tidewater's brief (p. 2) that since the trial of this case all assets of the Tide Water Realty Company, including its interest in the property involved in this case, have been transferred to Tidewater Oil Company.

to proceed in this case under the aforementioned Code of Civil Procedure, section 1246.1, the fair market value of the property sought to be condemned must be valued as if it were in a single ownership, and this Metcalfe obviously had not done. The trial court initially decided to grant this motion but after further argument denied it.

The condemnor's first valuation witness, Flavell, testified that in his expert opinion the property involved had a fair market value as of the aforementioned August 1, 1963, of $55,000. On cross-examination and over objection, he was asked what would be the effect on his opinion if he were to take into account the existence of Tidewater's leasehold. He replied that this would raise his opinion of the property's fair market value to $89,475.

The condemnor's second valuation witness, Culver, testified that in his expert opinion, the property involved, in a single ownership, had a fair market value as of the aforementioned August 1, 1963, of $52,000 but that his opinion of such value rose to $125,000 when he took into account Tidewater's existing leasehold in the property. Thereafter, with this witness still on the stand, the parties stipulated, in open court, as indicated at the outset of this opinion, to a fair market value of the property involved of $125,000, subject to the condemnor's right to attack such valuation on appeal.

The aforementioned Code of Civil Procedure, section 1246.1, since its enactment in 1939, has always read as follows: ''Where there are two or more estates or divided interests in property sought to be condemned, the plaintiff is entitled to have the amount of the award for said property first determined as between plaintiff and all defendants claiming any interest therein; thereafter in the same proceeding the respective rights of such defendants in and to the award shall be determined by the court, jury, or referee and the award apportioned accordingly. The costs of determining the apportionment of the award shall be allowed to the defendants and taxed against the plaintiff except that the costs of determining any issue as to title between two or more defendants shall be borne by the defendants in such proportion as the court may direct. ''

It is the condemnor's position that this statute requires, when a condemnor elects to use it, as here, that the fair market value of the property sought to be condemned must be determined as if the property were held in a single undivided

ownership regardless of the fact that actually, on the valuation date, the property was owned by more than one owner, and such condition of multiple ownership actually enhanced its fair market value on that date.

In support of this position the condemnor argues that this is the established California law under *People* v. *S. & E Homebuilders, Inc.,* 142 Cal.App.2d 105, 107 [298 P.2d 53], hearing denied, and *El Monte School Dist.* v. *Wilkins,* 177 Cal.App.2d 47, 54-55 [1 Cal.Rptr. 715], hearing denied; that this is the general rule elsewhere as well in condemnation valuations of this type of divided fee, based upon the application of the simple mathematical principle that the sum of the valuations of the separate parts of the whole cannot exceed (or raise) that of the whole (*Commonwealth of Kentucky Dept. of Highways* v. *Sherrod* (Ky.) 367 S.W.2d 844, 849); that this view is consistent with the fundamental in rem and real property nature of condemnation proceedings since what is being ignored thereby is the effect on the fair market value of the property of a purely personal contractual right of the lessor to receive rent over a period of time;[2] and that this view is in accord with the governing constitutional principle of just compensation because it permits the condemnor to pay only the price of what it actually seeks to acquire, which is an undivided fee, instead of the higher price of what the sellers have to sell, which is a fee in divided ownership. In short, under the constitutional principle of just compensation, the condemnor should pay the fair market value of only the property it actually takes and not the fair market value of that property plus the value of the lessor's personal right to receive rents under an existing lease over an extended period of time.

This undivided fee rule is undoubtedly the majority view within the United States and support for it may be found quite generally in the condemnation treatises and cases which, however, also recognize the minority rule covering such a

[2]This contention is unacceptable. The sum of the valuations of the separate estates of the landlord and the tenant in the property makes up the total value of the property taken. Both landlord and tenant are entitled under our law of condemnation to receive the values of their respective estates or interests in the land taken. (Code Civ. Proc., § 1248, subd. 1; see *Sacramento etc. Drainage Dist.* v. *Truslow,* 125 Cal.App.2d 478, 489 [270 P.2d 923, 271 P.2d 930], hear. den.) The landlord's right to receive future rents is an interest in land. (See *Callahan* v. *Martin,* 3 Cal.2d 110, 124 [43 P.2d 788, 101 A.L.R. 871].)

situation—the aggregate of interests rule—and also various exceptions to the application of the majority rule. (See Notes, 69 A.L.R. 1263; 166 A.L.R. 1211; 1 Orgel, Valuation Under Eminent Domain (2d ed. 1953) ch. IX; 4 Nichols, Eminent Domain, §§ 12.36, 12.42; Jahr, Eminent Domain (1957) ch. XVIII; 2 Lewis, Eminent Domain (3d ed. 1909) § 716.)

The condemnees' position in this case is that the question before us for decision is whether the effect upon the fair market value of the property taken in condemnation of the existence of a lease, having a relatively long unexpired term and a comparatively high rental, can and should be taken into consideration in determining that value. They argue that this question is solely an evidentiary one which must be answered in the affirmative in view of *People* v. *Dunn*, 46 Cal.2d 639, 641-642 [297 P.2d 964], and the comparatively new statute providing special rules of evidence applicable only to eminent domain and inverse condemnation proceedings, now article II, chapter 1 of division 7 of the new Evidence Code (§§ 810 through 822)[3] and particularly section 817 thereof.

Section 817, in part a codification of the rental income holding of the *Dunn* case, provides in relevant part as follows: "When relevant to the determination of the value of property, a witness may take into account as a basis for his opinion the rent reserved and other terms and circumstances of any lease which included the property or property interest being valued or any part thereof which was in effect within a reasonable time before or after the date of valuation."

It is true that in the *Dunn* case, a section 1246.1 case,[4] our Supreme Court expressly recognized the general rule that rental income is a proper element to be considered in arriving at just compensation in eminent domain proceedings and on this basis held that the trial court in that case committed reversible error when it struck the testimony of one of the condemnees' expert valuation witnesses and instructed the jury to disregard all of his testimony with respect to an existing lease on the property. But we do not regard this decision as controlling here in view of the fact, among other things, that its existence and contents were both called specifically to our Supreme Court's attention when a hearing was denied by

---

[3]From September 17, 1965, to January 1, 1967, this statute was a part of the Code of Civil Procedure. (Pt. III, tit. 7.1, §§ 1268-1272.4.)

[4]See the superseded opinion of the District Court of Appeal in the case, 287 P.2d 161, 165.

that court in the aforementioned *S & E* case[5] which is the chief California authority relied on here by the condemnor.

Similarly, the just mentioned and comparatively recent statute specifying the rules of evidence in eminent domain cases, relied on here by the condemnees, is by its express terms inapplicable, *as such*, to this case since this case was tried in June and July of 1964 and section 6 of this statute provides that it does not apply to any action or proceeding that was brought to trial prior to its effective date,[6] which date was September 17, 1965.[7]

Furthermore, we do not see in any event any unavoidable conflict between the decisional and statutory law permitting evidence of the rental income of the subject property in condemnation cases (*People* v. *Dunn, supra*; Evid. Code, § 817, *supra*) and the undivided fee rule urged by the condemnor here. ▆ Under section 1246.1 the trial of a condemnation case may consist of two phases. The first, or total award phase, involves both the condemnor and the various condemnees, and the second, or apportionment phase, involves the division of the total award among the condemnees only. Even if all evidence respecting rental income of an existing lease on the subject property is excluded in the first phase of the trial under the condemnor's interpretation of section 1246.1, such evidence obviously would be relevant and material during the second phase of the trial.[8]

On the other hand, we do not regard the California authorities relied on by the condemnor as decisive of the question before us. The enunciation of the undivided fee rule in *Wilkins* (177 Cal.App.2d 47, 54-55) was clearly dictum and in the *S & E* case (142 Cal.App.2d 105-106, 108) it was used to uphold the trial court's instruction to the jury that the existence of certain outstanding oil and gas leases was immaterial for the purpose of determining fair market value and sever-

---

[5]See appellant's petition for hearing in the case, pages 5-7.

[6]2 Stats. 1965, regular session, ch. 1151, p. 2900.

[7]1 Stats. 1965, p. A-3.

[8]Similarly, we find no fundamental conflict between Code of Civil Procedure, section 1246.1 as interpreted by the condemnor in this case, and the requirement of Code of Civil Procedure, section 1248, subdivision 1, that the trier of facts "must ascertain and assess: 1. The value of the property sought to be condemned, . . . and of each and every separate estate or interest therein, . . ." Under the condemnor's interpretation of section 1246.1, when the condemnor has elected to proceed under it, the values of the separate estates and interests are ascertained exclusively during the second, or apportionment, phase of the trial.

ance damages. In that case the condemnor was not seeking to acquire any rights to oil and gas below the 100-foot level and although the two lessees had both declined to relinquish their surface rights, which had 14 years or more to run, there were in fact no oil wells or other structures on the property and one of the two lessees had offered in writing to cooperate with the lessor in its proposed industrial development of the surface of the property, which all agreed was the highest and best use of the surface. Under these circumstances the existence of *these totally inoperative leases,* was plainly immaterial to the fair and proper valuation of the property to be taken for condemnation purposes. Therefore, the announcement in this decision of the undivided fee rule and its implied embodiment in section 1246.1 was unnecessary to the decision.

The question before us, in our view, is purely one of statutory construction. Is section 1246.1 a procedural statute, as the condemnees here contend, or is it one which embodies a rule of substantive condemnation law, as the condemnor claims? We think an examination of its language and contents demonstrates that it is purely and exclusively a procedural statute under which a condemnor may insist that the total award for the property to be taken be first determined and then, in the second phase of the trial, the respective shares of the multiple owners in that award be ascertained. This division of this type of condemnation trial into two parts, at the election of the condemnor, which we think is almost invariably exercised, not only expedites both the settlement and the trial of these cases, but also prevents the total sum awarded against the condemnor from being pyramided by multiple jury verdicts arrived at independently and without reference to each other, or by expert valuation witnesses for the various owners accomplishing the same end by valuing only the separate interests of those who have employed them without regard to the valuation of the entire property and without regard to the valuations of the estates or interests of the other owners of that property.

We doubt, therefore, that section 1246.1 impliedly adopted in California the undivided fee rule as a matter of substantive law rather than as a matter of procedure. If the intention of the Legislature in 1939 had been to do so it could have done so very easily by plain, simple and unequivocal language to that effect. In our opinion, section 1246.1 embodies neither the undivided fee rule nor the opposing aggregate of interests

rule. Its intent and effect are entirely procedural and nonsubstantive. Our construction of it is the same as that placed by the Supreme Court of Pennsylvania upon an essentially similar statute of that state. (See *Garella* v. *Redevelopment Authority*, 413 Pa. 181 [196 A.2d 344].)

Our reluctance to hold that section 1246.1 has the substantive effect claimed for it by the condemnor is grounded, as was that of the trial court in this case, upon our conclusion that so holding would make it violative of the various constitutional mandates of just compensation for the public taking of private property. (Cal. Const., art. I, § 14; U.S. Const. Amendments 5 and 14 (due process clause).) We will now explain our basis for this conclusion. We believe that it is beside the point to argue, as has been done so much elsewhere in the treatises and in the cases, whether in condemnation awards when multiple ownerships of the property to be taken exists, the sum of the parts must invariably never exceed the whole.[9] That is really not the question to be answered here.

The question to be answered in this case is, of what does the whole really consist, for which payment is to be made by the condemnor in one lump sum under section 1246.1, if it so elects? It seems to us that this whole must be the total of what the various involuntary sellers have to sell and not the undivided fee which the condemnor is seeking to acquire. The fact that in this situation, by resorting to section 1246.1, the condemnor can force the valuation award against it to be a single sum for the entire fee rather than a summation of the various separate sums awarded to the several owners of interests or estates in the total fee, arrived at independently of each other, does not compel the conclusion as a corollary to this requirement that the total fee so valued must of necessity be valued as if it were owned only by one owner, when in fact it is actually owned jointly by more than one owner. In other words, what section 1246.1 requires in this initial valuation, in the first phase of this type of condemnation trial, is a valuation of *the fee as a whole*, but not a valuation of that fee in an undivided state. The two should not be confused and equated as they so often have been.

We base this conclusion on the fundamental nature of the constitutional requirement of just compensation. All of

[9]See *The Condemnation of Leasehold Interests* (1962) 48 Va.L.Rev. 477, 490-493.

condemnation law (statutory and decisional), procedure and practice is but a means to this end of just compensation. The power of eminent domain is granted to the executive branch of the state government so that private property may be taken expeditiously for public use whenever it is so needed, but only upon payment of just compensation to the property owner. The right to take private property involuntarily for public use is conditional and bottomed upon the performance by public authorities of this obligation to pay to the owner of private property the just compensation due him. This obligation of the state to make just compensation to the property owner for the property taken has long been recognized in this state as concomitant with and inseparable from its right of eminent domain. (See *San Francisco, Alameda & S.R.R. Co.* v. *Caldwell*, 31 Cal. 367, 372.)

■ Just compensation under the Fifth Amendment to the United States Constitution, so far as taking damages are concerned, means the full and perfect equivalent in money of the property taken. The owner is to be put in as good a position pecuniarily as he would have occupied if his property had not been taken from him. (*United States* v. *Miller*, 317 U.S. 369, 373 [87 L.Ed.2d 336, 342, 63 S.Ct. 276, 147 A.L.R. 55].) We believe that the due process clause of the Fourteenth Amendment to the United States Constitution requires this as well. (Cf. *Marin Municipal Water Dist.* v. *Marin Water etc. Co.*, 178 Cal. 308, 314 [173 P. 469].)

■ In our opinion this is likewise the mandate of article I, section 14, of our state Constitution. The property owner must be made whole for his loss and be recompensed in an amount of money equal to that loss. (*City of Los Angeles* v. *Harper*, 139 Cal.App. 331, 334 [33 P.2d 1029].) ■ In short, just compensation is based on the loss the owner suffers rather than the benefit which the taker receives. (*People* v. *La Macchia*, 41 Cal.2d 738, 754 [264 P.2d 15], overruled on another point. *County of Los Angeles* v. *Faus*, 48 Cal.2d 672, 679 [312 P.2d 680].)[10] What is to be valued for that purpose is what the involuntary sellers have to sell rather than what the public buyer seeks to acquire.

■ In this state, as is generally true elsewhere, the consti-

[10]There are, of course, limitations upon this indemnity theory which are often called noncompensable consequential or incidental damages. These are, however, irrelevant to the point under discussion. (See *Eminent Domain—Policy and Concept* (1954) 42 Cal.L.Rev. 596, 615-618.)

tutional requirement of just compensation for the taking of property in eminent domain is normally satisfied by the payment by the condemnor to the condemnee of the market value of the property taken. (*People* v. *Fresno*, 210 Cal.App.2d 500, 515-516 [26 Cal.Rptr. 853], hear. den.) This market value is the highest price which the property would bring, if exposed for sale in the open market by a willing seller to a willing buyer with both parties to the transaction being fully informed of all the uses and purposes to which the property is reasonably adaptable and available. (See *Sacramento etc. R.R. Co.* v. *Heilbron*, 156 Cal. 408, 409 [104 P. 979]; Evid. Code, § 814.)[11] Subject to certain limitations which are not here relevant, to arrive at this value one must take into consideration all those things upon which such parties, dealing with each other in the open market, would reasonably rely. (*City of Stockton* v. *Vote*, 76 Cal.App. 369, 404-405 [244 P. 609], hear. den.) For this purpose the property, together with all of its compensable attributes, must be valued as the condemnor finds it, including without limitation thereby, the state of its title, and in this case, the Tidewater leasehold. (See *People* v. *L Macchia, supra*, 41 Cal.2d 738, 751; *County of Los Angeles* v. *Pan American Dev. Corp.*, 146 Cal.App.2d 15, 19 [303 P.2d 61], hear. den.; *Buena Park School Dist.* v. *Metrim Corp.*, 176 Cal.App.2d 255, 259 [1 Cal.Rptr. 250], hear. den.; *United States* v. *Eden Memorial Park Assn.* (9th Cir. 1965) 350 F.2d 933, 936.) We say this because this very valuable leasehold is one of the things which such a buyer and seller would consider in the open market in fixing the price at which the ownership of the property would be transferred. To say that the existence of such a lease should be ignored by resorting to the legal fiction and legal pretense of a single owner is to ignore the realities of the market place.[12] If compensation is

---

[11]We refer to this section which is part of the previously mentioned statute specifying rules of evidence in eminent domain cases notwithstanding the fact, as we have alluded to earlier, that such statute, by express provision, is not applicable *as such* to this case. We do so because the language in this section is clearly an adaptation of the language, continuously repeated in the California cases, of the leading *Heilbron* case and because of section 812 of this code which says that it "is not intended to alter or change the existing substantive law, whether statutory or decisional, interpreting 'just compensation' as used in Section 14 of Article I of the State Constitution or the terms 'value,' 'damage,' or 'benefits' as used in Section 1248 of the Code of Civil Procedure."

[12]Generally speaking, a person in the market place, purchases real property for one or more of the following three reasons—for shelter, for recreation, or in order to make money whether by way of resale or from

to be just and if the property owner is to be made whole for the involuntary loss of his property to the state, this cannot be permitted to happen.

To paraphrase the language of Mr. Justice Holmes in the famous case of *Boston Chamber of Commerce* v. *Boston*, 217 U.S. 189, 195 [54 L.Ed. 725, 727, 30 S.Ct. 459], by substituting ''Code of Civil Procedure, section 1246.1'' for ''Constitution,'' Code of Civil Procedure, section 1246.1 constitutionally interpreted and applied, does not require a disregard of the mode of the ownership—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is, ''What has the owner lost?'' not ''What has the taker gained?''

Otherwise, the property owner receives only partial compensation and the provision of partial compensation is *not* the provision of just compensation. (*People* v. *Loop*, 161 Cal.App. 2d 466, 474-475 [326 P.2d 902], hear. den.)

■ What could be more unfair than to say that the gasoline station site involved here must, by reason of section 1246.1, be valued in the first phase of the condemnation trial as if the Tidewater lease did not exist and then, after a total value for this property had been so established, to turn around and say that in the second phase of the trial the lessor may share only in an award from which at least much of the value of his interest in the property had already been excluded. No one disputes that the entire value of his interest must be considered in the second phase of the trial, the apportionment phase. In all fairness then it should likewise be considered in its entirety in the first phase of the trial when the total award against the condemnor, which is to be shared

the net income expected to be derived from the property. In the case of commercial property, such as the gasoline station site involved in this case, the predominant motivation normally is the last mentioned reason and a seller and a purchaser, so motivated, would never ignore in valuing this property for purposes of sale and purchase in the open market the existence of a leasehold so advantageous to the lessor as the Tidewater leasehold was.

It is generally recognized that a lease, favorable in its rent to the landlord, enhances not only the market value of his interest in the fee but also the market value of the fee itself. (See *Reeves* v. *Dallas* (Tex. Civ. App.) 195 S.W.2d 575, 579; *Department of Public Works & Bldgs.* v. *Kirkendall*, 415 Ill. 214 [112 N.E.2d 611, 612, 615].)

among the various owners in the second phase of the trial, is determined.

This is so because, as was said in *People* v. *Superior Court*, 145 Cal.App.2d 683, 690 [303 P.2d 628], hearing denied, the constitutional concept of just compensation expresses a principle of fairness. If any compensable constituent element of value, such as the Tidewater leasehold, is omitted in arriving at just compensation this constitutional mandate has not been met. (Cf. *Pacific Gas & Elec. Co.* v. *Devlin*, 188 Cal. 33, 38 [203 P. 1058]; *County of Santa Clara* v. *Ogata*, 240 Cal. App.2d 262, 265 [49 Cal.Rptr. 397].) Every rule of condemnation law, be it statutory or decisional, for determining the value of land taken in condemnation, must in its every application conform to this constitutional mandate. (Cf. *Napa Union High School Dist.* v. *Lewis*, 158 Cal.App.2d 69, 73 [322 P.2d 39], hear. den.; *People* v. *Auburn Ski Club*, 241 Cal. App.2d 781, 786 [50 Cal.Rptr. 859], hear. den.)

Accordingly, the judgment is affirmed.

Ford, P. J., and Moss, J., concurred.

Appellant's petition for a rehearing was denied September 21, 1967, and the following opinion was then rendered:

THE COURT.—In its petition for rehearing, appellant condemnor does not reargue the position it has heretofore uniformly taken throughout this litigation. This position is that Code of Civil Procedure section 1246.1 requires, when a condemnor elects to use it, as here, the application of the undivided fee rule and that such application is constitutional.

Instead it argues for the first time that the result of our opinion, holding that section 1246.1 is a purely procedural statute, is to force it to pay for the mistake of the lessee in paying a rent under the existing lease on the parcel taken by the appellant which is above the fair rental value on that parcel.

The fair rental value on that parcel was *not* an issue in the first phase of the condemnation trial, which is the only phase of that trial under review on this appeal. What was at issue instead was the fair market value of the parcel taken *in the condition in which that parcel was taken* including, among other things, the existence upon that parcel of a compara-

tively long term lease in which the rent that was reserved was in excess of the fair rental value.

Contrary to the appellant's clear implication in its petition for rehearing, in arriving at the fair market value of the parcel taken it was not improper for the three expert valuation witnesses to use the actual rent in the existing lease of the parcel taken in lieu of and in place of the fair rental value of that parcel. (See Evid. Code, §§ 817, 812.)

There is nothing unfair to the condemnor in a divided fee situation in the rule which we followed in our original opinion in this case—that the condemnor must take the property it condemns in the condition in which it finds it at the date of valuation or condition. If the actual rent under the existing lease is above the fair market value of the parcel taken, ordinarily the fair market value of that parcel will be enhanced and the condemnor must pay more for it by way of just compensation. If, on the other hand, the actual rental under the existing lease is less than such fair rental value, ordinarily the fair market value of the parcel taken will be reduced accordingly and the condemnor then pays less by way of just compensation. In either event the condemnor pays for what it takes *in the condition* the parcel was on the date of valuation or condition.

Appellant's petition for a hearing by the Supreme Court was denied November 22, 1967.