The PACIFIC TELEPHONE AND
TELEGRAPH COMPANY,
Plaintiff/Appellant,

v.

PUBLIC UTILITIES COMMISSION OF
the STATE OF CALIFORNIA et al.,
Defendants/Appellees,

City of Los Angeles, City of San Diego, City and County of San Francisco, Toward Utility Rate Normalization, Intervenors.

GENERAL TELEPHONE COMPANY
OF CALIFORNIA, a California Corporation, Plaintiff/Appellant,

v.

PUBLIC UTILITIES COMMISSION OF
the STATE OF CALIFORNIA et al.,
Defendants/Appellees.

79–3150, 79–3151.

United States Court of Appeals,
Ninth Circuit.

July 18, 1979.

Edward M. Goebel, San Francisco, Cal., Everett B. Clary, Clark Waddoups, O'Melveny & Myers, Los Angeles, Cal., for Pac. Tel. and Tel.

Janice E. Kerr, Timothy E. Treacy, San Francisco, Cal., for Public Utilities Com'n.

Frank Rothman & Gary N. Jacobs, Wyman, Bautzer, Rothman & Kuchel, Los Angeles, Cal. for General Tel. Co. of Cal.

John W. Witt, City Atty., William S. Shaffran, Deputy City Atty., San Diego, Cal., George Agnost, City Atty., Leonard L. Snaider, Deputy City Atty., San Francisco, Cal., Burt Pines, City Atty., Thomas C. Bonaventura and Edward J. Perez, Deputy City Attys., Los Angeles, Cal., for intervenors.

Before CHOY and GOODWIN, Circuit Judges, and EAST,* District Judge.

CHOY, Circuit Judge:

Pacific Telephone & Telegraph Co. (PTT) and General Telephone Co. of California (GT) appeal from the district court's denial of a preliminary injunction. We affirm.

## I. Statement of the Case

On September 13, 1977, the Public Utilities Commission of California (PUC), which regulates certain charges of PTT and GT, entered its Decision No. 87838. It ordered the two companies, engaged in providing telephone service in California, to refund certain monies paid by ratepayers for years prior to 1978 and to make rate reductions for the year 1978 and beyond. In so deciding, the PUC stated explicitly that it assumed that its order would not destroy the utilities' eligibility to take advantage of certain federal tax rules pertaining to accelerated depreciation and investment tax credits.

The PUC refused appellants' request for a rehearing on Decision No. 87838. The PUC, however, stayed implementation of its order pending judicial review. Upon two petitions by the utilities, the California Supreme Court refused to disturb the PUC's

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

order.[1] And the United States Supreme Court denied two writs of certiorari and later denied appellants' petitions for rehearing. On March 14, 1979, the PUC ended the stay of its order because "the avenues of judicial review have been exhausted" and also again denied appellants' petitions for rehearing.

Meanwhile, the utilities sought rulings from the United States Internal Revenue Service (IRS) concerning their eligibility for accelerated depreciation and investment tax credits under Decision No. 87838. The IRS ruled that the utilities would not be eligible for the tax advantages under the PUC's Decision No. 87838.

On March 15, 1979, a day after the PUC ended the stay of its order, the utilities began the instant litigation. PTT filed suit against the PUC and various federal officials related to the IRS[2] seeking to enjoin implementation of the PUC's rate order and seeking a declaratory judgment regarding PTT's eligibility for the tax advantages under the PUC's order. PTT also requested that if the court determined that PTT would be ineligible, then the PUC should be enjoined permanently from putting its order into effect. On the same day, GT instituted a similar suit.

PTT and GT each sought a temporary restraining order (TRO) and a preliminary injunction against implementation of the PUC's order. The cities of Los Angeles and San Diego, the City and County of San Francisco, and an organization called Toward Utility Rate Normalization were allowed to intervene. The PUC and these intervenors[3] opposed the motions for injunctive relief. The federal Government filed a motion to dismiss the action insofar as declaratory relief was sought.[4]

The district court granted a TRO staying implementation of the PUC order. Two weeks later the district court dissolved the TRO[5] and denied appellants' prayers for preliminary injunctions. On the same day, PTT and GT filed appeals in this court. A few days later this court enjoined implementation of the PUC order pending this appeal.

## II. Application of Res Judicata

The district court determined that appellants were not entitled to preliminary relief because

> The relief requested by plaintiffs herein is barred under the doctrine of res judicata by the denial by the California Supreme Court without written opinion of petitions for writ of review of Decision No. 87838 filed by General and Pacific.

The district court properly applied the doctrine of res judicata.

### A. Application of Res Judicata in California Rate Cases: The Napa Valley Decision

The United States Supreme Court and this court have acknowledged that, under California law, the California Supreme Court's denial of writs of review of rate decisions constitutes a denial on the merits and have held that such denials are entitled

---

1. The procedural aspects of the California Supreme Court's refusal to disturb the PUC's order are discussed in part II *infra.*

2. The federal officials were the Secretary of the Treasury and the Commissioner of Internal Revenue.

3. The United States has filed a brief in this court as amicus curiae discussing the Government's analysis of the tax questions relating to the utilities' eligibility for accelerated depreciation and investment tax credits under the PUC's order. *See* note 4 *infra.*

4. The present appeal involves interlocutory review of a district court order regarding an injunction under 28 U.S.C. § 1292(a)(1). We do not discuss the utilities' request for declaratory relief, nor do we intimate any view on the proper interpretation of the federal tax statutes regarding accelerated depreciation and investment tax credits. *See* note 3 *supra.*

5. The district court issued the TRO on March 15, 1979. Because of the ten-day time limit on TRO's imposed by Fed.R.Civ.P. 65(b), on March 20, 1979, the parties stipulated to the extension of the TRO until March 30, 1979. The district court issued its order dissolving the TRO and denying the preliminary injunctions on March 30, 1979.

to res judicata effect in federal courts. In *Napa Valley Electric Co. v. Railroad Commission,* 251 U.S. 366, 40 S.Ct. 174, 64 L.Ed. 310 (1920), a California electric company filed suit in federal district court seeking an injunction against a rate order of the California Railroad Commission, a forerunner of the present PUC. After the Commission had issued its rate order, the utility unsuccessfully sought a rehearing. The California Supreme Court later denied the utilities' petition for a writ of review. The federal suit was thereupon filed.

The district court denied the injunction and dismissed the federal suit because "the Electric Company filed in the [California] Supreme Court a petition for a review of the decision and order of the Commission and for their annulment, and . . . the Supreme Court denied the petition." *Id.* at 370, 40 S.Ct. at 175.

The United States Supreme Court held that the district court had properly invoked the doctrine of res judicata. *See id.* at 367, 40 S.Ct. 174. The Court wrote:

> Whether . . . the [California] court was required to pursue the details of the section or decide upon the petition was a matter of the construction of the [California statutory] section and the procedure under it. And the [California] Supreme Court has so decided. [Citations omitted.] In those cases the applications for writs of certiorari were denied, which

was tantamount to a decision of the [California] court that the orders and decisions of the Commission did not exceed its authority or violate any right of the several petitioners under the Constitution of the United States or of the State of California. . . . And we agree with the District Court that "the denial of the petition was necessarily a final judicial determination . . . ." And . . . "Such a determination is as effectual as an estoppel as would have been a formal judgment upon issues of fact." [Citations omitted.]

> The [district] court held, and we concur, that absence of an opinion by the [California] Supreme Court did not affect the quality of its decision or detract from its efficacy as a judgment upon the questions presented, and *its subsequent conclusive effect upon the rights of the Electric Company.*

*Id.* at 372–73, 40 S.Ct. at 176 (emphasis added).[6] This Circuit has subsequently embraced the *Napa Valley* doctrine. *See Southern Pacific Co. v. Van Hoosear,* 72 F.2d 903, 905 (9th Cir. 1934); *Wallace Ranch Water Co. v. Railroad Commission,* 47 F.2d 8, 9 (9th Cir. 1931).

### B. Continued Vitality of Napa Valley

The procedure for obtaining review of rate orders with which the Supreme Court dealt in *Napa Valley* has since been

---

6. The Supreme Court's language in *Napa Valley* indicates that the California Supreme Court's denial of review should be given res judicata effect even as to questions of federal constitutional law. Appellants suggest that the federal courts are now more reluctant to apply res judicata based on state court decisions when questions of construction of federal statutory or constitutional provisions exist.

We note that subsequent to *Napa Valley,* the California legislature modified the law regarding judicial review of rate orders to broaden and enhance the California Supreme Court's ability to inquire into federal constitutional questions in rate review. Cal.Pub.Util.Code § 1760, *quoted at* note 7 *infra*; *see Pac. Tel. & Tel. Co. v. Pub. Util. Comm'n,* 62 Cal.2d 634, 646, 44 Cal.Rptr. 1, 8, 401 P.2d 353, 360 (1965). This militates in favor of the *Napa Valley* approach.

We need not determine, however, if later cases have eroded federal deference to state interpretations of federal questions. In the instant case appellants' constitutional claims are frivolous. *See* note 15 *infra.* And the federal courts have not been asked in this proceeding for injunctive relief to interpret a federal statute. Appellants went to state court to have it overturn a state agency's rate order. Now they ask the federal courts to overturn the order. While appellants' underlying disagreement with the rate order is that the PUC allegedly misunderstood federal tax law (assuming that the IRS's interpretation is correct), whether this misunderstanding vitiates the rate order does not involve construction of a federal statute, but rather depends upon the scope of the PUC's discretion in setting rates. *Cf. Napa Valley Electric Co. v. R. R. Comm'n,* 251 U.S. 366, 372, 40 S.Ct. 174, 64 L.Ed. 310 (1920).

slightly modified and recodified, but the essential attributes of the procedure upon which the Supreme Court relied have remained the same.[7] Thus, in *People v. West-*

7. At the time of *Napa Valley,* the provision for judicial review of rate orders read:

Within thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the rendition of the decision on rehearing, the applicant may apply to the supreme court of this state for a writ of certiorari or review (hereinafter referred to as a writ of review) for the purpose of having the lawfulness of the original order or decision or the order or decision on rehearing inquired into and determined. Such writ shall be made returnable not later than thirty days after the date of the issuance thereof, and shall direct the commission to certify its record in the case to the court. On the return day, the cause shall be heard by the supreme court, unless for a good reason shown the same be continued. No new or additional evidence may be introduced in the supreme court, but the cause shall be heard on the record of the commission as certified to by it. The review shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the constitution of the United States or of the State of California. The findings and conclusions of the commission on questions of fact shall be final and shall not be subject to review; such questions of fact shall include ultimate facts and the findings and conclusions of the commission on reasonableness and discrimination. The commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceeding. Upon the hearing the supreme.court shall enter judgment either affirming or setting aside the order or decision of the commission. The provisions of the Code of Civil Procedure of this state relating to writs of review shall, so far as applicable and not in conflict with the provisions of this act, apply to proceedings instituted in the supreme court under the provisions of this section. No court of this state (except the supreme court to the extent herein specified) shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain or interfere with the commission in the performance of its official duties; *provided,* that the writ of mandamus shall lie from the supreme court to the commission in all proper cases.

1915 Cal.Stats. ch. 91, pp. 161–62, § 67. Presently, Cal.Pub.Util.Code §§ 1756–1760, first enacted in 1951, apply. Section 1756 now provides:

Within 30 days after the application for a rehearing is denied, or, if the application is granted, then within 30 days after the decision on rehearing, the applicant may apply to the Supreme Court of this State for a writ of certiorari or review for the purpose of having the lawfulness of the original order or decision or of the order or decision on rehearing inquired into and determined. The writ shall be made returnable at a time and place then or thereafter specified by court order and shall direct the commission to certify its record in the case to the court within the time therein specified.

Section 1757 reads:

No new or additional evidence may be introduced in the Supreme Court, but the cause shall be heard on the record of the commission as certified to by it. The review shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the constitution of the United States or of this State.

The findings and conclusions of the commission on questions of fact shall be final and shall not be subject to review except as provided in this article. Such questions of fact shall include ultimate facts and the findings and conclusions of the commission on reasonableness and discrimination.

Section 1758 provides:

The commission and each party to the action or proceeding before the commission may appear in the review proceeding. Upon the hearing the Supreme Court shall enter judgment either affirming or setting aside the order or decision of the commission. The provisions of the Code of Civil Procedure relating to writs of review shall, so far as applicable and not in conflict with the provisions of this part, apply to proceedings instituted in the Supreme Court under provisions of this article.

Section 1759 reads:

No court of this State, except the Supreme Court to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, except that the writ of mandamus shall lie from the Supreme Court to the commission in all proper cases.

Section 1760 provides:

In any proceeding wherein the validity of any order or decision is challenged on the ground that it violates any right of petitioner under the Constitution of the United States, the Supreme Court shall exercise an independent judgment on the law and the facts, and the findings or conclusions of the commission

*ern Air Lines,* 42 Cal.2d 621, 268 P.2d 723 (1954),[8] *appeal dismissed,* 348 U.S. 859, 75 S.Ct. 87, 99 L.Ed. 677 (1955),[9] the California Supreme Court reaffirmed the rule relied upon in *Napa Valley* that denial of a writ of review is a final judgment on the merits; it also applied that rule specifically to the PUC. The California court wrote:

> Direct attack [on PUC orders] is made available by application for writ of review to this court . . . .
>
> · . . . It is established . . . that the denial by this court of a petition for review of an order of the commission is a decision on the merits both as to the law and the facts presented in the review proceedings. [Citation omitted.] This is so even though the order of this court is without opinion. Napa Valley ·Electric Co. . . . .

*Id.* at 630–31, 268 P.2d at 728. The court then quoted extensively from *Napa Valley,* including its language regarding application of res judicata to denials of writs of review by the California court. *Id.* We conclude, therefore, that the recodification of California law has not affected the vitality of the *Napa Valley* reading of California procedure or of the *Napa Valley* decision itself.

### C. *Effect of People v. Medina*

Appellants contend that *People v. Medina,* 6 Cal.3d 484, 99 Cal.Rptr. 630, 492 P.2d 686 (1972), has undermined the rule that the

California Supreme Court's denial of a writ of review of a PUC order constitutes a final adjudication for res judicata purposes. We disagree.

Medina was charged in a criminal prosecution with unlawfully possessing heroin for sale. At a pretrial hearing he moved to suppress evidence because of an alleged unlawful search. The trial court denied the motion. Medina filed a formally sufficient petition for a writ of prohibition to gain review of the trial court's evidentiary ruling as provided by California Penal Code § 1538.5.[10] The Court of Appeal denied the petition without opinion and the California Supreme Court denied a hearing.

After conviction Medina appealed, again claiming that the evidence should have been suppressed. The Court of Appeal held that the denial of the writ of prohibition was res judicata upon this direct appeal, creating a conflict with another Court of Appeal decision which held "that the denial without opinion of a defendant's pretrial petition for a writ under section 1538.5 is not a conclusive determination of the validity of the challenged search." *Id.* at 488, 99 Cal. Rptr. at 632, 492 P.2d at 688. The California Supreme Court held that the latter view of a denial of a § 1538.5 writ was correct. *Id.* at 488, 99 Cal.Rptr. at 632, 492 P.2d at 688.

---

material to the determination of the constitutional question shall not be final.
For a discussion of the purpose underlying § 1760, *see* note 6 *supra.*

**8.** Between the date of *Western Air Lines* and the present, there has been only one minor modification of the procedure for judicial review of rate orders. The final sentence of § 1756 as quoted in note 7 *supra* was added in 1963. 1963 Cal.Stats. ch. 461, p. 1310, § 6. Prior to that time, § 1756 ended:

> The writ shall be made returnable not later than 30 days after the date of issuance, and shall direct the commission to certify its record in the case to the court. On the return day, the cause shall be heard by the Supreme Court, unless for a good reason shown it is continued.

This administrative change gives the California Supreme Court greater flexibility in timing returns, records, and hearings. It does not affect

the essential procedures for obtaining review of rate orders which underlay *Napa Valley* and *Western Air Lines.*

**9.** The United States Supreme Court wrote in a per curiam:

> The motion to dismiss is granted and the appeal is dismissed for the want of a substantial federal question.

348 U.S. at 859, 75 S.Ct. at 87. *See* note 6 *supra.*

**10.** The *Medina* court wrote:

> Section 1538.5 provides that the defendant may seek pretrial appellate court review of the superior court's order denying his motion to suppress evidence by petitioning for a writ of mandate or prohibition and that he "may seek further review of the validity of a search or seizure on appeal from a conviction."

6 Cal.3d at 488, 99 Cal.Rptr. at 632, 492 P.2d at 688 (footnote omitted). ·

The California Supreme Court first noted that the legislative history of Penal Code § 1538.5 showed that the state legislature intended "that the merits of search and seizure challenges raised by a defendant's unsuccessful petition for a pretrial writ may remain open for further review on appeal from an ensuing judgment of conviction." *Id.* at 489, 99 Cal.Rptr. at 633, 492 P.2d at 689. The court also observed that the legislature in enacting "new procedures for the presentation of search and seizure challenges" did not intend to alter the traditional California procedure affording a criminal defendant a written opinion and formal hearing as to his fourth amendment contentions. *Id.* at 490, 99 Cal.Rptr. at 633, 492 P.2d at 689. Yet, the court wrote, if the denial of a writ, which does not require a hearing or written opinion under the California constitution or procedure, were given res judicata effect, then the criminal defendant would lose those benefits traditionally afforded. Moreover, defense counsel, recognizing this problem, would cease to invoke § 1538.5, thus undermining the legislature's intent to provide this method of challenging admissibility of evidence. *Id.* at 490, 99 Cal.Rptr. at 633–34, 492 P.2d at 689–90.

The court rejected the People's argument that res judicata should be applied anyway because "the sole possible ground of the . . . denial of defendant's petition . . . was on the merits . . . ." *Id.* at 490, 99 Cal.Rptr. at 634, 492 P.2d at 690. The court wrote:

[W]e cannot accept the People's contention that the sole possible ground for denying defendant's petition for the writ was a determination against him on the merits. We have continued to recognize that the writs of mandate and prohibition are "extraordinary" and "prerogative" and that therefore their use for pretrial review . . . should be confined to questions of . . . general importance.

*Id.* at 491, 99 Cal.Rptr. at 634, 402 P.2d at 690. The court then referred to the many reasons, not related to the merits, because of which the Court of Appeal may have denied the writ. The court concluded:

In light of the various considerations which may impel appellate justices to vote to deny a defendant's petition for a pretrial writ under section 1538.5 without opinion, we believe that giving such a minute order conclusive effect on an appeal from a subsequent judgment of conviction would amount to improper conjecture and surmise as to the theoretically possible mental processes of the justices.

*Id.* at 492, 99 Cal.Rptr. at 635, 492 P.2d at 691. The court added:

In view of the express language of section 1538.5, application of the doctrine of res judicata to give conclusive effect on appeal from a judgment of conviction to an appellate court's earlier decision denying defendant's application for a pretrial writ would be inappropriate even when the denial of the writ is by an opinion demonstrating adjudication of the merits. The statute permits the defendant to seek further review of the validity of the challenged search on appeal from a judgment of conviction . . . . .

*Id.* at 492, 99 Cal.Rptr. at 635, 492 P.2d at 691.

The foregoing indicates that *Medina* did not affect the long-time California rule, reaffirmed in *Western Air Lines*, that the Supreme Court's denial of a writ of review of a rate order is a decision on the merits for res judicata purposes. *Medina* dealt with the res judicata effect of the denial of an extraordinary writ provided by the legislature under Penal Code § 1538.5 to afford a criminal defendant two opportunities to obtain review of trial court rulings on fourth amendment questions. The California Supreme Court concluded that application of res judicata, whether denial of a writ under § 1538.5 is with or without opinion, would be inconsistent with the legislature's intent in providing two opportunities for review.[11]

---

11. *See* the preceding quotation in text.

Thus, *Medina* did not deal with the non-criminal writ of review provided by Public Utilities Code § 1756 as the sole means of obtaining judicial review of PUC rate orders.[12] *Medina* did not purport to overrule or limit *Western Air Lines* or the traditional rule applied in *Napa Valley*. Indeed, the *Medina* court did not even cite *Western Air Lines*, though one would expect such a citation were *Medina* intended to overrule the long-followed practice reaffirmed in that decision.

Appellants argue that *Medina* found the constitutional requirement of a written opinion to be an obstacle to application of res judicata when a writ is denied without written opinion. This is incorrect. First, while the particular case before the court involved a denial without written opinion, the court indicated that whether or not an opinion had been issued in denying a § 1538.5 writ, giving res judicata effect to the denial would conflict with the legislature's intent to provide duplicitous review.[13] Second, the court noted that the California constitutional provision requiring written opinions in some cases did not apply to the denial of writs. *Id.* at 490, 99 Cal.Rptr. at 633, 492 P.2d at 689. Indeed, the court wrote:

> The denial without opinion of a petition for a writ of mandate or prohibition is not res judicata except when the sole possible ground of denial was on the merits or it affirmatively appears that the denial was intended to be on the merits.

*Id.* at 491 n.6, 99 Cal.Rptr. at 634 n.6, 492 P.2d at 690 n.6. Thus, although the court also noted that the multitude of reasons why a writ under Penal Code § 1538.5 might be denied made it difficult to read the denial (at least in the case before it) as on the merits, it indicated that even in the context of writs of prohibition and mandate the absence of a written opinion was not necessarily fatal to application of res judicata.[14]

In short, we conclude that *Medina* did not undermine the long-followed California rule that the Supreme Court's denial of a writ of review of a rate order without opinion constitutes a final judgment entitled to res judicata effect. Therefore, *Napa Valley*, involving a situation almost identical to the case before us, mandates application of res judicata in the present case.[15] Accordingly, the district court's invocation of res judicata and its judgment are

AFFIRMED.

---

**12.** *See* note 7 *supra*.

**13.** 6 Cal.3d at 492, 99 Cal.Rptr. at 635, 492 P.2d at 691. *See* discussion *supra*.

**14.** As noted *supra*, we do not believe that *Medina*, dealing with a particular type of writ of prohibition or mandate in the criminal context, can reasonably be read as impinging upon the much different context of the writ of review provided by Cal.Pub.Util. Code §§ 1756–1760. However, even if we assume that *Medina* states the standard for application of res judicata to writs of review of PUC orders, res judicata was properly applied here. While Cal.Pen.Code § 1538.5 provides for duplicitous appellate review which may be denied without resort to the merits, Cal.Pub.Util.Code §§ 1756–1760 provide the exclusive means of obtaining appellate review of a PUC order. Thus, a denial of a writ of review must be interpreted as having involved rejection on the merits of appellants' claims.

**15.** Appellants contend that it is both unfair and violative of due process to invoke res judicata here, allegedly because they have not had their day in court. We disagree. Appellants have presented their claims to the PUC on three occasions. They have also presented their claims to the California Supreme Court and sought a writ of certiorari from the United States Supreme Court as well as a rehearing on the Supreme Court's denial of certiorari. Moreover, appellants will have an opportunity to present to the federal courts their contentions regarding the proper interpretation of federal tax statutes if and when the IRS seeks to collect the contested taxes. Additionally, appellants may also have an opportunity to litigate those interpretations in their declaratory relief action, though we express no opinion as to the propriety or proper outcome of that matter. *See* note 4 *supra*. That appellants' litigation efforts have been unsuccessful does not warrant rejection of res judicata; that doctrine is generally applied only because one side to litigation has lost and one side has won.