793 F.2d 1090
 JACKSON WATER WORKS, INC., a California corporation, and
Citizens Utilities Company, a Delaware
corporation, Plaintiffs-Appellants,
v.
The PUBLIC UTILITIES COMMISSION OF the STATE OF CALIFORNIA,
et al., Defendants- Appellees.
 No. 85-1667.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 11, 1985.
Decided July 8, 1986.
 
 James M. Wagstaffe, Cooper, White & Cooper, San Francisco, Cal., for plaintiffs-appellants.
 Lawrence Q. Garcia, Public Utilities Comm., Richard J. Massa, Richard J. Massa & Associates, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before SKOPIL, PREGERSON, and WIGGINS, Circuit Judges.
 SKOPIL, Circuit Judge:
 
 
 1
 This is a challenge by a private utility to the constitutionality of a state statutory scheme which allows public condemnors the choice of adjudicating just compensation in either state court or before the Public Utility Commission. We agree with the district court that the statutes do not facially violate either equal protection or due process. We affirm.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 Plaintiff-appellant Jackson Water Works ("JWW") is an investor-owned public utility water system serving customers in and around Jackson, California. Plaintiff-appellant Citizens Utilities Company is JWW's sole shareholder. Defendant-appellees are the City of Jackson and its various officers ("City") and the California Public Utility Commission and its members ("PUC").
 
 
 3
 On April 10, 1984 the City, acting pursuant to Cal.Pub.Util.Code Secs. 1403-04 (West 1975), declared its intention to acquire JWW through eminent domain by filing a petition with the PUC. The petition sought a determination by the PUC of the amount of just compensation to be paid by the City. Before such a determination could be made, JWW filed this action in federal district court seeking declaratory and injunctive relief. JWW contended that the administrative procedure offends equal protection because similarly situated utilities are subjected to just compensation determination at the City's option in either state court or before the PUC. JWW further alleged that adjudication of just compensation by the PUC violates due process because it denies an impartial tribunal and meaningful appellate review.
 
 
 4
 On cross-motions for summary judgment the district court granted the City's motion. JWW timely appealed. Thereafter, the district court granted JWW's motion for an injunction pending appeal that has prevented the PUC from proceeding with the just compensation determination.
 
 STANDARD OF REVIEW
 
 5
 A grant of summary judgment is reviewed de novo. Lupert v. California State Bar, 761 F.2d 1325, 1327 (9th Cir.), appeal dismissed and cert. denied, --- U.S. ----, 106 S.Ct. 241, 88 L.Ed.2d 251 (1985). Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to prevail as a matter of law. Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir.1985). There are no disputed facts in this case. Resolution therefore depends upon de novo examination of questions of law. See United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101 (1984). The district court's interpretation and application of state law is entitled to no special deference; questions of state law are reviewed de novo. Matter of McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).
 
 DISCUSSION
 
 6
 A. Equal Protection.
 
 
 7
 The equal protection clause of the fourteenth amendment commands that no state shall deny any person the equal protection of the laws. City of Cleburne v. Cleburne Living Center, --- U.S. ----, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). This requires that "all persons similarly circumstanced shall be treated alike." Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982) (quoting F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920)).
 
 
 8
 JWW complains that equal protection is violated by arbitrary discrimination between identically situated public utility condemnees. The alleged discrimination is the result of a statutory condemnation scheme which allows a city condemnor to unilaterally select the forum for the adjudication of just compensation. Significant procedural differences between the forums, JWW argues, give rise to the equal protection violation.
 
 1. Statutory Scheme
 
 9
 A California political subdivision which seeks to exercise its powers of eminent domain to acquire property must institute and conduct an action in the California Superior Court. Cal.Civ.Proc.Code Secs. 1230.010-070 (West 1982). Both condemnor and condemnee have the right to a jury determination of just compensation. Cal. Const. art. I, Sec. 19. The condemnee may seek review of the court's determination by an absolute right of appeal to the California Court of Appeals. Cal. Const. art. VI, Sec. 11; Cal.Civ.Proc.Code Sec. 904.1. A discretionary writ of review may be made to the California Supreme Court. Cal. Rules of Court, Rule 28.
 
 
 10
 When the condemnee is a public utility, the political subdivision may elect the procedures provided by the California Public Utility Code. Cal.Pub.Util.Code Secs. 1401-21. That statute provides that upon petition by the City, the PUC, acting in its judicial capacity, will conduct proceedings to determine just compensation. Id. at Sec. 1411. The administrative procedure is commenced at the City's option. It is an "alternative and cumulative and not exclusive" procedure for the determination of just compensation. Id. at Sec. 1421. There are no juries. Review is by application for rehearing to the Commission and by writ of review to the California Supreme Court. Id. at Sec. 1420.
 
 
 11
 If the utility refuses to accept the compensation, the City is required to obtain an order of condemnation by commencing an action in Superior Court. Id. at Sec. 1413. In such court proceedings the finding of the Commission fixing compensation are "final and shall not be subject to modification, alteration, reversal or review." Id. at Sec. 1416.
 
 2. Level of Review
 
 12
 In determining whether the statutory scheme violates equal protection, we must first determine the level of scrutiny to apply. See San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). JWW argues we must apply strict scrutiny because the state's classifications impinges upon fundamental rights. The City contends that the district court correctly applied a rational basis standard.
 
 
 13
 Traditionally, these two standards, strict scrutiny and rational basis, have been applied when state action is challenged on equal protection grounds. Hoffman v. United States, 767 F.2d 1431, 1434 (9th Cir.1985). Strict scrutiny is applied when the state's classification is deemed to be made on "suspect" grounds such as race, ancestry, alienage, or categorizations impinging upon fundamental rights such as privacy, marriage, voting, travel, and freedom of association. Id. at 1434-35.[1] When no suspect class is involved and no fundamental right is burdened, we are obligated to apply a rational basis test to determine the legitimacy of the state's classifications. Olagues v. Russoniello, 770 F.2d 791, 802 (9th Cir.1985).
 
 
 14
 JWW contends that the classification here impinges on its rights to just compensation, a right expressly protected by the fifth amendment. Such a right has not been deemed "fundamental" for purposes of applying strict scrutiny in an equal protection analysis. More important, as the district court reasoned, JWW does not contend that it is denied just compensation, but only complains of the process. Deficiencies in that process such as lack of a jury trial and limited appeal rights, JWW contends, call for at least heightened scrutiny. But while these alleged deficiencies may give rise to equal protection arguments, i.e., Lindsey v. Normet, 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972) (right of appeal); Humphrey v. Cady, 405 U.S. 504, 512, 92 S.Ct. 1048, 1053, 31 L.Ed.2d 394 (1972) (jury), neither has been accorded heightened review. See Hoffman, 767 F.2d at 1435 (noting that intermediate review has been limited to gender and legitimacy classifications).
 
 
 15
 We conclude that the district court properly chose to apply the rational basis standard. Where a regulation or statute affects only economic and not fundamental interests, the state is free to create any classification scheme that does not invidiously discriminate. Burlington Northern Railroad Co. v. Department of Public Service Regulation, 763 F.2d 1106, 1113 (9th Cir.1985). The proper test for judging the constitutionality of statutes regulating economic activity challenged on equal protection grounds is whether the legislation bears a rational relationship to a legitimate state interest. Id. at 1109; Jones v. Reagan, 748 F.2d 1331, 1337 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 3505, 87 L.Ed.2d 636 (1985). "Because the classification at issue does not interfere with the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class, the proper standard for review is the rational basis test...." In re Lara, 731 F.2d 1455, 1460 (9th Cir.1984).
 
 3. Rationality of the Statutory Scheme
 
 16
 Application of the rational basis standard requires a two-step analysis. Hoffman, 767 F.2d at 1436 (citing Western & Southern Life Insurance Co. v. State Board of Equalization, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981)). First, we must determine whether the challenged legislation has a legitimate purpose. Id. Second, assuming a legitimate purpose, we must decide whether the challenged classification promotes that purpose. Id. at 1436-37. There need not be a "tight fitting relationship" between the legislative goal and the result. Id. at 1437 n. 7. All that is needed to uphold the state's classification scheme is to find that there are "plausible," "arguable," or "conceivable" reasons which may have been the basis for the distinction. Brandwein v. California Board of Osteopathic Examiners, 708 F.2d 1466, 1472 (9th Cir.1983) (citations omitted). "Whether these reasons in fact underlay the legislative action is 'constitutionally irrelevant.' " Id. (quoting Flemming v. Nestor, 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960)). The moving party carries the burden of proving unconstitutionality under a rationality review because statutes are presumed to be constitutional. Burlington Northern, 763 F.2d at 1109; see also Jones, 748 F.2d at 1338 (legislation is presumed to be rational).
 
 
 17
 The California Supreme Court in reviewing the administrative option here concluded that when a city elects to petition the agency to determine just compensation "it simply avails itself of the privileges thereby granted to bring into operation the facilities, expert and technical, which the Commission has on hand in connection with the exercise of its regulatory powers." East Bay Municipal Utility District v. Railroad Commission of California, 194 Cal. 603, 229 P. 949, 951 (1924) (referring to PUC's predecessor agency, the Railroad Commission). It appears that the California legislature, in creating the dual forum system, expected that the particular expertise of the PUC would further the interests of justice and economy in some instances but not in others. Presumably, the larger, more complex adjudications would be handled by the PUC. See Marin Municipal Water District v. Marin Water and Power Co., 178 Cal. 308, 173 P. 469, 472 (1918) ("fact that public utilities are subject to constant regulation and examination by the [commission] may well have led the Legislature to conclude that the commission was best able to make a just and equitable appraisement of their property"). JWW apparently does not dispute that the legislature could reasonably have concluded that the PUC's expertise is needed for just compensation determinations in all utility condemnations. See Marin Municipal Water District, 173 P. at 472 (upholding the utility and non-utility distinction against equal protection attack).
 
 
 18
 The district court, in rejecting JWW's equal protection claim, relied primarily on the conclusion that the procedural differences in the forums are insufficient to give rise to an ascertainable injury. Assuming that the differences in forums are constitutionally insubstantial, there is ample decisional support for the district court's conclusion. In American Party of Texas v. White, 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974), the Court reasoned that an appellant claiming an equal protection violation bears the burden of demonstrating discrimination "of some substance." The burden is not met by mere assertions that differences exist. A state is not guilty of invidious discrimination in "recognizing these differences and providing different routes." Id. at 782 n. 13, 94 S.Ct. at 1306 n. 13. Similarly, in American Motorists Insurance Co. v. Starnes, 425 U.S. 637, 644-45, 96 S.Ct. 1800, 1804-05, 48 L.Ed.2d 263 (1976), the Court reasoned:
 
 
 19
 [I]t is fundamental rights which the Fourteenth Amendment safeguards and not the mere forum which a State may see proper to designate for the enforcement and protection of such rights. Given therefore a condition where fundamental rights are equally protected and preserved, it is impossible to say that the rights which are thus protected and preserved have been denied because the State has deemed best to provide for a trial in one forum or another. It is not under any view the mere tribunal into which a person is authorized to proceed by a State which determines whether the equal protection of the law has been afforded, but whether in the tribunals which the State has provided equal laws prevail.
 
 
 20
 (quoting Cincinnati Street R.R. Co. v. Snell, 193 U.S. 30, 36-37, 24 S.Ct. 319, 321-22, 48 L.Ed. 604 (1904)).
 
 
 21
 Nevertheless, there is an argument that the procedural differences are not constitutionally insubstantial. JWW contends that the two forums do not apply the same substantive law because the Commission systematically relies on a methodology of valuation that tends to understate true valuation. The PUC has rejected, however, the possibility that it is entitled to utilize a different method of valuation than mandated by law. See East Yolo Community Services District, 1 Cal. PUC 2d 474, 476-77 (1979) (noting Commission's adoption of method of valuation set by decisional law and later codified at Cal.Civ.Proc.Code Sec. 1263.320). Moreover, in Community Redevelopment Agency v. Abrams, 15 Cal.3d 813, 543 P.2d 905, 126 Cal.Rptr. 473, 478 (1975), the California Supreme Court stated:
 
 
 22
 The fact that the law provides two distinct methods for governmental acquisition of public utilities--proceedings before the commission ... and judicial eminent domain proceedings ...--does not, as defendant suggests, "create serious equal protection problems" due to differing substantive measures of recovery according to the method chosen. [I]t was the clear intent of the Legislature to create alternative methods of procedure, and that procedure authorized by the Public Utilities Code should not be held to be exclusive of the judicial method.... It is manifest that the measure of compensation vouchsafed a public utility by the Public Utility Code ... is also to be accorded it in proceedings under the Code of Civil Procedure.
 
 
 23
 Id., 543 P.2d at 910-11 n. 6 (citations omitted; quotes and emphasis in original).
 
 
 24
 JWW argues that the consequences of the City's unilateral forum decision is more than procedural because the City's choice of the agency eliminates the right to a jury and intermediate appellate review. In Lindsey v. Normet, 405 U.S. at 79, 92 S.Ct. at 877, the Supreme Court struck down an Oregon statute that required a double-bond from a certain class of appellants. The Court reasoned that when an appeal is afforded, it cannot be granted to some litigants and capriciously and arbitrarily denied to others. Id. at 77, 92 S.Ct. at 876. The Court found the requirement to be arbitrary because it did not satisfy any legitimate state purpose. Id. at 77-79, 92 S.Ct. at 876-77.
 
 
 25
 In Humphrey v. Cady, 405 U.S. at 507-11, 92 S.Ct. at 1051-53, the Supreme Court examined petitioner's contention that institutionalization under the state's Sex Crimes Act is essentially equivalent to commitment for compulsory treatment under the state's Mental Health Act. Petitioner argued that since the latter provided for a trial by jury, his commitment under the former without a right to a jury determination violated equal protection. The Court concluded that the claim merited remand for an evidentiary hearing since the equal protection claim appears "especially persuasive if it develops on remand that petitioner was deprived of a jury determination, or of other procedural protections, merely by the arbitrary decision of the State to seek his commitment under one statute rather than the others." Id. at 512, 92 S.Ct. at 1053.
 
 
 26
 Language in these cases offer JWW substantial support for its position. Nevertheless, they do not necessarily direct a conclusion that the legislative scheme here violates equal protection. First, the state is not obligated under the federal Constitution to provide either a right of appeal or a jury trial. See Lindsey, 405 U.S. at 77, 92 S.Ct. at 876 (if a full and fair trial on merits is provided, state need not provide appellate review); Minneapolis & St. Louis Railroad Co. v. Bombolis, 241 U.S. 211, 217, 36 S.Ct. 595, 596, 60 L.Ed. 961 (1916) (seventh amendment not applicable to the states). Second, the Supreme Court has recognized that the creation of administrative remedies may properly eliminate rights that may have been available in the judicial forum. For example, in Atlas Roofing Co., Inc. v. Occupational Safety and Health Review Commission, 430 U.S. 442, 460, 97 S.Ct. 1261, 1271, 51 L.Ed.2d 464 (1977), the Court concluded that the seventh amendment did not prevent Congress from creating rights and remedies by statute, committing their enforcement to a tribunal other than a court, and thereby eliminating factfinding by a jury. The seventh amendment is no bar to the enforcement of new rights in a speedy and expert tribunal. Id. at 461, 97 S.Ct. at 1272.
 
 
 27
 Most important, it is conceivable that the legislature rationally believed that cities would be in the best position to choose the appropriate forum. Although the legislature did not express criteria to govern the City's choice, this does mean that the City selects the forum for the specific purpose of depriving the utility of a jury or review by the state court of appeals. The selection of the administrative forum also deprives the City of a jury determination and intermediate review. Presumably, the legislature believed that the City would exercise its discretion in an appropriate manner. We agree with the district court that the legislature could have rationally concluded that the public's interest would be better served by allowing the City to select the forum. As the district court noted, "[w]hile the utility may only consider the narrow interests of its private investors, the municipality is responsible to the public interest in general."[2]
 
 
 28
 We conclude that the legislation has a legitimate purpose and that the challenged classification reasonably supports that purpose. The forum selection results in no ascertainable injury since the same substantive law is applied. Further, the legislative decision to vest discretion in the public condemnor is a rational method of achieving the legislative purpose of directing a certain class of utility condemnation compensation decisions to the PUC. The state's decision does not have to be perfect; there need only be plausible or conceivable reasons which may have been the basis for the distinction. Brandwein, 708 F.2d at 1472. "Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." Clements v. Fashing, 457 U.S. 957, 963, 102 S.Ct. 2836, 2343, 73 L.Ed.2d 508 (1982).
 
 
 29
 B. Due Process.
 
 
 30
 The due process clause guarantees an aggrieved party the opportunity to present a case and have its merits fairly judged. Logan v. Zimmerman Brush Co., 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982). "[S]ome form of hearing" is required before a person is deprived of a protected property interest. Id. (quoting Board of Regents v. Roth, 408 U.S. 564, 570-71 n. 8, 92 S.Ct. 2701, 2705-06 n. 8, 33 L.Ed.2d 548 (1972) (emphasis in original). JWW contends that just compensation determinations by the PUC violate procedural due process because (1) the Commission is biased in its reliance on an unfair valuation methodology; (2) the Commission unlawfully combines its legislative and judicial functions; and (3) there is no meaningful appellate review.
 
 1. Bias
 
 31
 Every party is entitled to an impartial tribunal. Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980). JWW argues that the PUC is predisposed to using an original cost valuation method which tends to understate the true value of the utility. But, as we noted above, the PUC has adopted and applies the same valuation method used in Superior Court condemnation proceedings. See East Yolo Community, 1 Cal. PUC 2d at 476-77. There is no bias in favor of a methodology other than the methodology required by law.
 
 2. Judicial Capacity
 
 32
 JWW complains that the PUC acts in both a legislative capacity (rate setting) and a judicial capacity (just compensation). This dual capacity has been expressly upheld by the California Supreme Court. In Marin Municipal Water District, 173 P. at 472, the court acknowledged that fixing the amount payable as just compensation is a judicial question and that due process would be lacking if the state took property without a judicial determination of just compensation. Nevertheless, the court concluded that in a prior decision, Marin Water and Power Co. v. Railroad Commission, 171 Cal. 706, 154 P. 864 (1916), it was settled that the Commission's authority to fix just compensation for utility property taken by eminent domains was derived from Art. 12, Sec. 5 of the California Constitution as a judicial power. Marin Municipal Water District, 173 P. at 472. Thus, the Commission is empowered by the state constitution to act in both capacities.
 
 3. Appellate Review
 
 33
 JWW complains that Cal.Pub.Util.Code Sec. 1416's limitation of review is a denial of due process. When a full and fair adjudication on the merits is provided, due process does not require a state to provide appellate review. Lindsey, 405 U.S. at 77, 92 S.Ct. at 876. Further, we conclude that the review provided is sufficient to meet the requirements of procedural due process. While discretionary writs of review to the California Supreme Court are rarely granted, the denial of a writ of review by that court, even without opinion, is a decision on the merits entitled to res judicata effect. See Pacific Telephone & Telegraph Co. v. Public Utilities Commission, 600 F.2d 1309, 1316 (9th Cir.), cert. denied, 444 U.S. 920, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979). Additionally, the PUC adjudicates only how much compensation is justly owed to the utility. All other condemnation proceedings are reserved for the Superior Court with full intermediate appellate review. Cal.Civ.Proc.Code Secs. 1230.050; 904.1.
 
 
 34
 We acknowledge that review by discretionary writ may not provide all the advantages of review by the court of appeals. Nevertheless, the fact that the state need not provide any appellate review and that the review that is provided is on the merits is sufficient to uphold section 1416 against a due process attack.
 
 CONCLUSION
 
 35
 Utility condemnees are not denied equal protection by a legislative scheme that permits the public condemnors the unilateral choice of adjudicating just compensation in either state court or before the PUC. The adjudicatory process before the PUC does not violate the utility's right to procedural due process.
 
 
 36
 AFFIRMED.
 
 
 37
 PREGERSON, Circuit Judge, dissenting.
 
 
 38
 In approaching this case, it is instructive to examine the following situation. A California city seeks to condemn property owned by two similarly-situated public utilities. The city institutes condemnation proceedings against the first utility in California state trial court, where that utility has a right to a jury trial and an absolute right to appeal the trial court's decision to the California Court of Appeal. The city takes the other utility through compensation proceedings before the Public Utilities Commission, where that utility has no right to a jury trial and may seek only limited review of the PUC's compensation decision through a rarely-granted discretionary writ to the California Supreme Court.[1] The city's choice of forum is completely unilateral and unfettered; the utility/condemnee has no right to alter the city's decision. I believe that such a statutory scheme, which allows identically-situated utility/condemnees to be subject to fundamentally different treatment at the whim of a California political subdivision, violates the equal protection clause of the federal constitution.[2] I therefore dissent.
 
 
 39
 I recognize that under the rational relation standard, the burden on a plaintiff to establish an equal protection violation is significant. The rational relation test, however, is "not a toothless one." Schweiker v. Wilson, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981) (quoting Matthews v. Lucas, 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976)). A state "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary and irrational." City of Cleburne v. Cleburne Living Center, --- U.S. ----, 105 S.Ct. 3249, 3258, 87 L.Ed.2d 313 (1985). The Supreme Court, when faced with various arbitrary and irrational classifications, has not found this standard insurmountable. See, e.g., Metropolitan Life Insurance Co. v. Ward, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) (invalidating statute that imposed higher tax rate on out-of-state companies); Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (Alaska may not distribute income from its natural resources to residents on the basis of length of residency). In fact, the Court has struck down state procedures similar to the one employed in this case under the rational relation test. See Lindsey v. Normet, 405 U.S. 56, 79, 92 S.Ct. 862, 877, 31 L.Ed.2d 36 (1972) (striking down state statute that imposed an increased appeal bond only for those appealing from summary ejectment actions); see also Humphrey v. Cady, 405 U.S. 504, 512, 92 S.Ct. 1048, 1053, 31 L.Ed.2d 394 (1972) (state scheme that arbitrarily denies the right to jury to similarly situated persons would violate the equal protection clause). I believe that the statutory scheme in this case is unconstitutional under Lindsey and Humphrey, and I am unpersuaded by the majority opinion's efforts to distinguish those cases.
 
 
 40
 At the outset, I disagree with the suggestion that the important rights denied to utilities proceeding before the PUC are constitutionally insignificant.[3] The importance of the special skills that civil juries bring to the fact-finding process has long been recognized.[4] Similarly, the Court has acknowledged that appellate review, if granted by a state, must be fair and effective for all appellants.[5]
 
 
 41
 The burden imposed by California's dual system on these two important rights, i.e. jury trial and fair and effective appellate review, cannot be justified in light of the Supreme Court decisions in Lindsey and Humphrey. The majority opinion acknowledges the importance of these two decisions, but nevertheless does not find them controlling in this case for a number of reasons. I will address each of these reasons in turn.
 
 
 42
 First, the majority opinion, citing Lindsey, notes that a state is not obligated to provide either a right of appeal or a right to jury trial. This argument, while certainly correct, misses the mark. A state may deny these rights to its citizens, but if it grants these rights it may not afford them to some and arbitrarily and irrationally deny them to others. This, in fact, was the essence of the holding in Lindsey that a state could not require certain appellants to post a higher bond. Lindsey, 405 U.S. at 77, 92 S.Ct. at 876 ("When an appeal is afforded, however, it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause."); see Humphrey, 405 U.S. at 512, 92 S.Ct. at 1053 ("[Petitioner's] equal protection claim would seem to be especially persuasive if it develops on remand that petitioner was deprived of a jury determination, or of other procedural protections, merely by the arbitrary decision of the State to seek his commitment [to a mental institution] under one statute rather than the other.").
 
 
 43
 Second, the majority opinion relies on Atlas Roofing Co. v. Occupational Safety and Health Review Commission, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), for the proposition that the seventh amendment permits the creation of rights and remedies which are enforced only through administrative proceedings. I do not argue with this concept and would have no quarrel if the statutory scheme in this case mandated that all utility condemnation proceedings must be brought before the PUC. Unlike Atlas Roofing, the statutory scheme in this case does not merely commit the enforcement of certain rights and remedies to one administrative tribunal, but rather permits the same type of action in two significantly different forums. The important rights involved in this case are not denied to all utility/condemnees, but only to those utilities to whom the city unilaterally chooses to deny those rights.
 
 
 44
 Third, the majority opinion suggests that the arbitrary denial by a city of a condemnee's rights to jury trial and fair and effective appellate review is somehow fair because the city is similarly deprived of those rights if it chooses to proceed before the PUC. The statutory scheme, however, arbitrarily permits a city to decide when it will be afforded these rights and when it will not; the utilities have no such choice. Naturally, a city will forego those rights when it is beneficial to do so, and vice versa.
 
 
 45
 Fourth, the majority opinion places faith in the ability of cities to promote the legislative purpose behind the dual scheme; that is, channeling the more complex condemnation proceedings to the PUC. However, in failing to provide any meaningful guidelines and giving cities unfettered and unreviewable discretion to choose the forum in which to proceed, the statutory scheme permits the cities to act in derogation of the legislative purpose. For instance, a city is permitted under the statute to take smaller cases to the PUC and to take more complex cases to a California state trial court. Such a result, of course, is in direct contradiction to the statute's avowed purpose.[6] If the statute had indicated that cities were to take the more complex cases to the PUC, then it would be rationally related to the purpose of using the PUC's technical expertise. Absent any statutory criteria, however, the majority leaves it up to the unfettered whim of the city whether the legislative purpose will be served in any given case, or at all.
 
 
 46
 Finally, the majority opinion states that it was conceivable that the legislature would think that "cities would be in the best position to choose the appropriate forum" because "the municipality is responsible to the public interest in general." I find this argument unrealistic. In each case, a city will choose the forum that will produce the best result for it.[7] If a city believes that in a particular case a jury trial will result in a lower compensation award, it will choose to proceed in state trial court; if not, it will go to the PUC.
 
 
 47
 I believe that the statutory scheme in this case is arbitrary because its relation to the avowed purpose of using the PUC's expertise in complex cases is simply too attenuated. To allow a condemnor the unfettered discretion to grant or deny similarly-situated condemnees the right to a jury trial and to fair and effective appellate review offends both common sense and the equal protection clause. I therefore dissent.
 
 
 
 [1]
 An intermediate level of scrutiny has been applied to gender-based classifications and categorizations involving legitimacy. Hoffman, 767 F.2d at 1435; see also Jones v. Reagan, 748 F.2d 1331, 1337 (9th Cir.1984) (describing intermediate level as "heightened" review), cert. denied, --- U.S. ----, 105 S.Ct. 3505, 87 L.Ed.2d 636 (1985)
 
 
 [2]
 The district court also relied in part on the general practice of allowing the prosecuting party the discretion to proceed in alternative forums. The court examined Georgia Power Co. v. 54.20 Acres of Land, 563 F.2d 1178 (5th Cir.1977), cert. denied, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979), rev'd in part on other grounds, Georgia Power Co. v. Sanders, 617 F.2d 1112 (5th Cir.1980) (en banc), cert. denied, 450 U.S. 936, 101 S.Ct. 1403, 67 L.Ed.2d 372 (1981). There the court reviewed a federal statute that permitted a utility licensee to exercise the power of eminent domain in either federal or state court. In dictum, the court stated that it found no equal protection violation by the plaintiffs choosing "between two or more causes of action with different consequences for defendants." Id. at 1193; see also Sanders, 617 F.2d at 1122, n. 15 (no merit to argument that impermissible forum shopping and denial of equal protection may result from application of different standards of compensation when a licensee has the option of proceeding under state or federal powers of eminent domain)
 The district court's analogy is not perfect. The choice of actions created by the federal statute was between state court and federal court. JWW concedes that the equal protection clause does not apply when the dissimilar treatment involved is the result of differences between the laws not of one state, but of different sovereignties. A state's creation of alternative forums may cause constitutional problems if arbitrary selection deprives a litigant of significant procedural protections. See Humphrey, 405 U.S. at 512, 92 S.Ct. at 1053.
 
 
 [1]
 The actual operation of the administrative system involved in this case belies any notion that review of condemnation proceedings by discretionary writ is meaningful. It appears that in the seventy year history of this scheme, the California Supreme Court has never reversed a compensation decision of the PUC. In fact, it has granted review in only three cases, and has not reviewed a case in fifty years
 Moreover, the scope of review is much more limited than that afforded to civil litigants appealing from state trial court. The question on petition for review before the California Supreme Court is whether the PUC has "regularly pursued its authority." Cal.Pub.Util.Code Sec. 1757. If the California Supreme Court denies the petition for review, the PUC's decision is final and further review by any California court is not permitted. See Cal.Pub.Util.Code Sec. 1416.
 
 
 [2]
 Appellants do not challenge the statutory scheme under the California Constitution. Therefore, I decline to address this issue. Cf. Carreras v. City of Anaheim, 768 F.2d 1039, 1042-43 (9th Cir.1985) (if both state and federal constitutional challenges are made, court must address the state ground before reaching the federal constitutional issue)
 
 
 [3]
 The majority opinion, while assuming arguendo that jury trials and meaningful appellate review are cognizable rights under the equal protection clause, nevertheless concludes that "the forum selection results in no ascertainable injury...." Opinion at 13
 
 
 [4]
 See, e.g., Dimick v. Schiedt, 293 U.S. 474, 485-86, 55 S.Ct. 296, 300-01, 79 L.Ed. 603 (1935) (jury trial is "generally regarded as the normal and preferable mode of disposing of issues of fact in civil cases"); Sioux City & Pacific Railroad Co. v. Stout, 84 U.S. (17 Wall.) 657, 664, 21 L.Ed 745 (1874) ("It is assumed that twelve men know more of the common affairs of life than does one man."); In re United States Financial Securities Litigation, 609 F.2d 411, 431 (9th Cir.1979) ("[N]o one has yet demonstrated how one judge can be a superior fact-finder to the knowledge and experience citizen-jurors bring to bear on a case."), cert. denied, 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980); see generally C. Wright, Federal Courts 606 (4th ed. 1983)
 
 
 [5]
 See Lindsey, 405 U.S. at 74-75, 92 S.Ct. at 874-75; see also Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 834, 838-41, 83 L.Ed.2d 821 (1985) (if a state grants appeals as of right to criminal defendants, equal protection notions require that the appeals process be "adequate and effective" for each appellant) (quoting Griffin v. Illinois, 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956))
 
 
 [6]
 Similarly, the Court in Lindsey stated: "[t]he claim that the double-bond requirement operates to screen out frivolous appeals is unpersuasive, for it not only bars nonfrivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond." Lindsey, 405 U.S. at 78, 92 S.Ct. at 876
 
 
 [7]
 I do not mean to imply that cities act in bad faith or otherwise abuse the judicial process. Cities, like all other civil litigants, simply avail themselves of those procedures that favor their position